# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| ERNEST SIWIK, M.D., | ) | CASE NO: 1:17CV1063 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| CLEVELAND CLINIC FOUNDATION, et al., | ) | |
| | ) | |
| Defendants. | ) | **MEMORANDUM OPINION &** |
| | ) | **ORDER** |

This case is before the Court upon consent of the parties, entered October 10, 2017.

(Doc. No. 17.) Currently pending are Defendants Akron Children's Hospital and Dr. John

Lane's Motion for Summary Judgment, Defendants the Cleveland Clinic Foundation and Dr.

Elizabeth Saarel's Motion for Summary Judgment, and Plaintiff Ernest Siwik's Motion for

Partial Summary Judgment. (Doc. Nos. 50, 51, 52.)

Plaintiff Ernest Siwik ("Siwik") filed a Brief in Opposition to Defendants Akron

Children's Hospital and Dr. John Lane's ("The Akron Children's Defendants") Motion for

Summary Judgment on October 22, 2018, to which Defendants replied. (Doc. Nos. 53, 57.) The

Akron Children's Defendants also filed a Brief in Opposition to Plaintiff's Motion for Partial

Summary Judgment on October 22, 2018, to which Plaintiff replied. (Doc. Nos. 54, 58.)

Plaintiff Siwik also filed a Brief in Opposition to Defendants the Cleveland Clinic

Foundation and Dr. Elizabeth Saarel's ("The Cleveland Clinic Defendants") Motion for

Summary Judgment on October 22, 2018, to which Defendants replied. (Doc. Nos. 55, 56.)

For the following reasons, (1) Plaintiff's motion is DENIED; (2) the Cleveland Clinic

Defendants' motion is GRANTED IN PART and DENIED IN PART; and (3) the Akron

Children's Defendants' motion is GRANTED IN PART and DENIED IN PART. (Doc. Nos. 50,

51, 52.)  Specifically, the Court finds:

> (1) Defendant Cleveland Clinic's Motion for Summary Judgment as to Counts One, Two, Four, Five, and Eight is GRANTED;

> (2) Defendant Cleveland Clinic's Motion for Summary Judgment as to Counts Three and Six is DENIED;

> (3) Defendant Akron Children's Hospital's Motion for Summary Judgment as to Count Eight is GRANTED;

> (4) Defendant Akron Children's Hospital's Motion for Summary Judgment as to Counts Three and Seven is DENIED;

> (5) Defendant Saarel's Motion for Summary Judgment as to Count Eight is DENIED;

> (6) Defendant Lane's Motion for Summary Judgment as to Count Eight is DENIED;

> (7) The Akron Children's Defendants' Motion for Summary Judgment on the issue of punitive damages is DENIED;

> (8) Plaintiff Siwik's Motion for Partial Summary Judgment as to Counts Three, Seven, and Eight is DENIED.

## I. Procedural Background

On May 22, 2017, Plaintiff Ernest Siwik ("Plaintiff" or "Siwik") filed a *pro se* Complaint in this Court against Defendant the Cleveland Clinic Foundation ("Cleveland Clinic"), alleging various claims arising from the Cleveland Clinic's decision not to hire him for a pediatric interventional cardiologist position.  (Doc. No. 1.)  Defendant Cleveland Clinic filed an Answer on July 31, 2017.  (Doc. No. 7.)

Siwik thereafter retained counsel and filed his First Amended Complaint on September 11, 2017.  (Doc. Nos. 10, 14.)  The First Amended Complaint added three new defendants: Elizabeth Saarel, M.D., Akron Children's Hospital, and John Lane, M.D.  (Doc. No. 14.)  On

October 2, 2017, the Cleveland Clinic Defendants filed an Answer to the Amended Complaint. (Doc. No. 16.)  The Akron Children's Defendants filed their Answer to the Amended Complaint on November 21, 2017.  (Doc. No. 22.)

On February 28, 2018, Siwik filed a Second Amended Complaint, asserting the following eight claims: (1) national origin discrimination under Title VII as to the Cleveland Clinic (Count 1); (2) federal age discrimination as to the Cleveland Clinic (Count 2); (3) federal retaliation claims as to the Cleveland Clinic and Akron Children's Hospital (Count 3); (4) age discrimination under O.R.C § 4112.14 as to the Cleveland Clinic (Count 4); (5) national origin discrimination under O.R.C. § 4112.02 as to the Cleveland Clinic (Count 5); (6) retaliation under O.R.C. §4112.02 as to the Cleveland Clinic (Count 6); (7) retaliation under O.R.C. §4112.02 as to Akron Children's Hospital (Count 7); and (8) aiding and abetting discrimination under O.R.C. §4112.02 as to all Defendants (Count 8).  (Doc. No. 28.)  Both the Akron Children's Defendants and the Cleveland Clinic Defendants filed Answers on March 14, 2018.  (Doc. No. 30, 31.)

On September 21, 2018, the Akron Children's Defendants filed a Motion for Summary Judgment as to all of Siwik's claims against them (Counts 3, 7, 8).  (Doc. No. 50.)  Siwik filed a Brief in Opposition on October 22, 2018, to which Defendants replied.  (Doc. Nos. 53, 57.)

Also on September 21, 2018, Plaintiff filed a Motion for Partial Summary Judgment as to all of his claims against the Akron Children's Defendants (Counts 3, 7, 8).  (Doc. No. 51.)  The Akron Children's Defendants filed a Brief in Opposition on October 22, 2018, to which Siwik replied.  (Doc. No. 54, 58.)

Finally, on September 21, 2018, the Cleveland Clinic Defendants filed a Motion for Summary Judgment as to all of Siwik's claims against them (Counts 1, 2, 3, 4, 5, 6, 8).  (Doc.

No. 52.)  Plaintiff filed a Brief in Opposition on October 22, 2018, to which the Cleveland Clinic

Defendants replied.  (Doc. Nos. 55, 56.)

This matter is now fully briefed and ripe for consideration.

## II.  Facts

Dr. Ernest Siwik ("Siwik") is a United States citizen.  (Doc. No. 50-7, Siwik Depo at Tr.

134.)  He is currently the acting director of cardiology at Children's Hospital in New Orleans

and an associate professor of pediatrics at Louisiana State University.  (Doc. No. 50-2, Siwik

Depo at Tr. 24.)  In 2008, Siwik was the acting director of pediatric cardiology at Rainbow

Babies and Children's Hospital.  (*Id.* at Tr. 25.)  During his time in this position, he performed

both interventional and general cardiology work.  (Doc. No. 50-7, Siwik Depo at Tr. 36-37.)  In

late 2008, Siwik accepted a full-time position as general cardiologist at the Cleveland Clinic.  He

began this position on or about July 1, 2009.  (Doc. No. 50-2, Siwik Depo at Tr. 26-28.)  Siwik

worked in this capacity for about three weeks, before leaving to work at Children's Hospital in

New Orleans as a full-time interventional cardiologist.  (*Id*. at 27-28.)

At the time of his move to New Orleans, Siwik's family was unable to move to Louisiana

with him.  However, Siwik was able to work out a schedule with his employer which allowed

him to return to Ohio on a regular basis.  (*Id.* at 28.)  During this time, Siwik worked for the

Cleveland Clinic on a contract basis, seeing patients 1-2 days each month.  (*Id*. at 29.)  Siwik

continued to work for the Cleveland Clinic on a contract basis until May 31, 2015, when he

formally resigned.  (Doc. No. 50-7, Siwik Depo at Tr. 84, Exh. Z.)

In 2012, Siwik began to look for employment opportunities outside of New Orleans.

(Doc. No. 50-2, Siwik Depo at Tr. 36.)  On September 10, 2013, Siwik emailed Dr. Prieto and

Dr. Piedmonte, two physicians at the Cleveland Clinic, expressing his interest in a cardiologist position. (Doc. No. 50-5, Saarel Depo, Exh. 20.) Dr. Prieto responded to this email on September 12, 2013, informing Siwik that while a cardiologist was leaving the Cleveland Clinic, there were no plans to replace this physician. (*Id.*)

*Interventional Cardiologist Position*

On March 9, 2014, Dr. Siwik again emailed Drs. Prieto and Piedmonte, indicating he was aware another cardiologist was leaving the Cleveland Clinic. (*Id.* at Exh. 21.) He reiterated his interest in returning to Cleveland on a permanent basis. (*Id.*) Dr. Prieto responded to this email, informing Dr. Siwik she had offered the position to her current catheterization fellow, Dr. Suntharos. (*Id.*) Dr. Siwik responded on March 12, 2014, expressing confusion over the fact that within a few months after Dr. Prieto reported she was "not hiring an interventionalist, one [was] hired." (*Id.*)

Dr. Suntharos officially began to work for the Cleveland Clinic as an interventional cardiologist on August 25, 2014. (*Id.* at Tr. 33, 157.) Dr. Suntharos is not a U.S. citizen. (Doc. No. 52-1, *Declaration of Michelle Seifert*.) The Cleveland Clinic hired Dr. Suntharos on a temporary work visa (H1-B) and subsequently sponsored his green card application. (*Id.*)

In order to comply with immigration guidelines related to the employment of Dr. Suntharos, the Cleveland Clinic posted advertisements in the Plain Dealer and the Sun Press/Sun Messenger in July 2015. (Doc. No. 50-6, Saarel Depo, Exh 25.) These advertisements read as follows:

> PEDIATRIC INTERVENTIONAL CARDIOLOGIST
>
> Cleveland Clinic in Cleveland, OH seeks Pediatric Interventional Cardiologist to treat wide variety of patients; perform cardiac

catheterizations including state-of-the-art interventions in pediatric patients with acquired and congenital heart disease and adult congenital patients; and evaluate and manage general pediatric cardiology patients in outpatient and inpatient settings. On call responsibilities. Position requires: MD or foreign equivalent as determined by a credentials evaluation or as evidenced by an ECFMG Certificate, Board Eligibility or Board Certification in Pediatric Cardiology, 1 year of advanced fellowship training in Pediatric Cardiology, and eligibility for Ohio Medical Licensure. Resumes to: Michelle Seifert, 1950 Richmond Rd, Mail Code Tr 302, Cleveland, Ohio 44124.

(Doc. No. 50-5, Saarel Depo, Exh. 23.) The Cleveland Clinic also posted this ad on its own website. (Doc. No. 50-6, Saarel Depo, Exh. 29.) The ad on the website contained a notice the position was "posted in connection with the filing of an application for permanent alien labor certification." (*Id*.) The Cleveland Clinic asserts these job postings were made solely as part of Dr. Suntharos's green card application, not as part of a physician hiring process. (Doc. No. 52-1, *Declaration of Michelle Seifert*.)

Three applicants responded to the job posting, one of which was Siwik. (Doc. No. 50-5, Saarel Depo at Tr. 193, 214.) After reviewing the applications, the Cleveland Clinic concluded none of the applicants were qualified for the position. Based upon this conclusion, the Cleveland Clinic submitted an application for the permanent employment certification of Dr. Suntharos. (*Id.* at Tr. 214, 215, Doc. No. 50-6, Saarel Depo Exh. 32.)

On August 4, 2015, Michelle Seifert, an employee at the Cleveland Clinic, emailed Siwik to thank him for his interest in the position and inform him the position required a one-year advanced fellowship training[1] in pediatric cardiology. (Doc. No. 50-6, Saarel Depo Exh. 29.)

---

[1] The Cleveland Clinic requires its pediatric interventional cardiologists to have an advanced fellowship training in interventional cardiology. (Doc. No. 50-5, Saarel Depo at Tr. 38.) Since 1996, the Cleveland Clinic has not hired any interventionalists who have not

Siwik has not completed an interventional fellowship, though such fellowships were available at the time he was undergoing training. (Doc. No. 50-7, Siwik Depo at Tr. 130-131.) However, Siwik received post-graduate training at Duke and Harvard, during which he performed procedures under the supervision of an interventional cardiologist. (*Id*. at Tr. 24-27.)

In October 2015, Dr. Elizabeth Saarel ("Saarel") became the chair of pediatric cardiology at the Cleveland Clinic. (Doc. No. 50-5, Saarel Depo at Tr. 21, 34.) On November 1, 2015, Siwik filed a charge against the Cleveland Clinic with the Equal Employment Opportunity Commission ("EEOC"). (Doc. No. 50-8, Siwik Depo, Exh. HH.) His claims related to the interventional cardiologist position filled by Dr. Suntharos. (*Id*.)

*General Cardiologist Position at Hillcrest*

The Cleveland Clinic hired a general pediatric cardiologist, Dr. Challapudi, at its Hillcrest location on September 12, 2016. (Doc. No. 50-5, Saarel Depo at Tr. 152, 167.) Prior to the hiring of Dr. Challapudi, Siwik responded to an ad for this position he saw in a cardiology journal. (Doc. No. 50-7, Siwik Depo at Tr. 152-153.) Siwik does not recall if he submitted an application through the Cleveland Clinic's website, but he did email Saarel directly on July 1, 2016, informing her he was interested in the position. (*Id*. at Tr. 153, Doc. No. 50-6, Saarel Depo, Exh. 33.)

On July 4, 2016, Saarel emailed Siwik with the response of "Great" and proceeded to inform Siwik she was "already bringing one person in to interview who was a final candidate"

---

completed this training. (Doc. No. 52-3, *Declaration of Lourdes Prieto, MD*.) The Cleveland Clinic has never hired Siwik as an interventional cardiologist, but did hire him as a general cardiologist in 2008. (Doc. No. 50-2, Siwik Depo at Tr. 26-28.)

for another position. (Doc. No. 50-6, Saarel Depo, Exh. 33.) Siwik responded to this email, inquiring if his candidacy for any position was a "non-starter," as he "felt like a pariah with regards to being considered for anything." (*Id*. at Exh. 34.) Saarel responded on July 15, 2016, assuring Siwik his "candidacy is NOT a non-starter at all." (*Id*.)(emphasis in original) She emphasized the "timing for this hire was crucial and [the Cleveland Clinic] already had a candidate I[sic] in the pipeline when [Siwik] first contacted [her] about the position." (*Id.*) Saarel assured Siwik she would let him know if a second position opened. (*Id*.)

Meanwhile, Dr. Zahka, a cardiologist at the Cleveland Clinic, approached Dr. Saarel about hiring Dr. Siwik for the Hillcrest position. (Doc. No. 50-5, Saarel Depo at Tr. 169-170.) What transpired during the conversation between Saarel and Dr. Zahka is in dispute. According to Saarel, she told Dr. Zahka that Siwik should apply for the position. (*Id*. at 171.) According to Siwik, Dr. Zahka told him Saarel indicated Siwik's "EEOC complaint would likely be a deal-breaker with regards to employment at the Cleveland Clinic." (Doc. No. 50-7, Siwik Depo at Tr. 168.) Dr. Zahka asserts Saaral told him she was "not open to hiring [Siwik] and that his claims against the Cleveland clinic were an issue," but he did not "recall her exact words." (Doc. No. 55-11, *Declaration of Kenneth Zahka, M.D*.) Saarel denies she told Dr. Zahka the EEOC charge was an issue. (Doc. No. 50-5, Saarel Depo at Tr.173.)

On August 24, 2016, Saaral and Siwik spoke over the phone. (*Id*. at Tr. 224.) According to Saarel, she was struck by how "strong [Siwik's] anger and bitterness was towards the Cleveland Clinic" during the conversation. (*Id.* at Tr. 176.) According to Siwik, he and Saarel discussed the EEOC charge during this conversation. (Doc. No. 50-7, Siwik Depo at Tr. 172.)

Following this phone conversation, Saarel emailed Siwik to say she did not "fully

8

understand" his desire to work at the Cleveland Clinic given his "ongoing negative feelings." (Doc. No. 50-6, Saarel Depo. Exh. 36.) Siwik responded on September 4, 2016, asserting he was not angry at the Cleveland Clinic, but rather "very disappointed that over the past 3 or 4 years [he had] been shut out of consideration for anything, including positions [he was] over-qualified for." (Id.) The EEOC charge was not referenced at any point in this email chain. (Doc. No. 50-7, Siwik Depo at Tr. 177-178.)

In August 2016, Saaral spoke to Dr. Zahka a second time, observing Dr. Siwik was "very angry against multiple people here at the Clinic" and "didn't trust the Clinic." (Doc. No. 50-5, Saarel Depo at Tr. 171, 172.) According to Saarel, she asked Dr. Zahka "why would [Siwik] want to work here if he thinks this place is so rotten and the people in it." (*Id*. at 172.) Saarel testified she informed Dr. Zahka that Siwik had not applied for the Hillcrest position and had instead wanted to talk with her first. (*Id*.)

*Akron Children's Position*

On November 16, 2016, Saarel emailed Dr. John Lane ("Lane"), a cardiologist at Akron Children's Hospital, informing him Siwik was looking for a position in Northeast Ohio. (Doc. No. 50-3, Lane Depo, Exh. 3, 4.) Shortly thereafter, Lane contacted Siwik, inquiring if Siwik was interested in possibly working at Akron Children's. (Doc. No. 50-2, Siwik Depo at Tr. 56-57.) Siwik responded he was interested in "any clinical position that can allow [him] to work in" Northeast Ohio. (Doc. No. 50-3, Lane Depo, Exh. 5.)

In early 2017, Akron Children's conducted a financial analysis to determine if it was "financially reasonable to replace a part-time person with a full-time person." (*Id*. at Tr. 92.) The analysis specifically compared the costs and benefits of a departing part-time physician with

Siwik. (*Id.* at Exh. 7.) This analysis noted "Dr. Siwik is a seasoned cardiologist who will ramp up immediately and can function in a single cardiologist setting." (*Id.*) Lane testified the position was not approved at the time of the analysis. However, Lane knew Akron Children's "had the potential for creating another position to fill, and [he] was considering [Siwik] as a possibility for that position." (*Id.* at Tr. 69.) Lane testified he was "trying to craft a position that Dr. Siwik could potentially fall into." (*Id.* at Tr. 96.) Akron Children's approved this position in May 2017 and posted an ad in June 2017. (*Id.* at Tr. 69-70, Doc. No. 50-4, Lane Depo, Exh. 10, 11, 12.)

On May 2, 2017, Siwik attended a recruitment dinner with Lane and several other physicians from Akron Children's. (Doc. No. 50-3, Lane Depo. Exh. 1, Exh. 9.) Following this dinner, on May 16, 2017, Siwik requested Lane write a letter on his behalf to demonstrate he was actively seeking employment in Northeast Ohio. He requested this letter to assist with his ongoing custody dispute. (Doc. No. 50-2, Siwik Depo at Tr. 61, 121; Doc. No. 50-3, Lane Depo at Tr.16-17.)

Lane agreed to write the letter. This letter, dated May 17, 2017, read as follows:

Dear Dr. Siwik:

This letter is to follow up on our recent telephone conversation. Thank you for visiting with members of my clinical team in the Heart Center on May 2, 2017.

I believe your qualifications are a good fit for the needs of our program. We are looking for an experienced pediatric cardiologist who is able to assume a busy outpatient practice. In addition, your skills as an interventional pediatric cardiologist fit nicely with our physician staffing needs in the Cardiac Cath Lab as well.

I look forward to the next step which is to meet with our senior leadership. This will be arranged by our physician recruitment team.

I appreciate your sincere interest in seeking employment at Akron Children's Hospital.

(Doc. No. 50-2, Siwik Depo Exh. F).

Meanwhile, on May 18, 2017, Siwik mailed Saaral a copy of his federal lawsuit complaint. (Doc. No. 50-5, Saarel Depo at Tr. 235, Doc. No. 50-6, Saarel Depo Exh. 39.) In late May or early June 2017, Sarrel told Lane over the phone Siwik had made a discrimination claim against the Cleveland Clinic. (Doc. No. 50-3, Lane Depo at Tr. 50.) According to Saaral, she did not suggest or imply Akron Children's should not hire Siwik and the conversation was not regarding Siwik's candidacy with Akron Children's. (Doc. No. 50-5, Saarel Depo at Tr. 270.)

Following this conversation, Lane notified the executive vice president and the chief medical officer of Akron Children's of the lawsuit. (Doc. No. 50-3, Lane Depo at Tr.53.) Lane notified these individuals because Akron Children's was "in the process of considering Dr. Siwik for a position" and he was not certain if this information was "relevant or not." (*Id*. at 54.) In addition, Lane told Siwik that Saarel spoke to him about the lawsuit. Siwik subsequently sent Lane a copy of his Complaint around June 22, 2017. (*Id*. at 59.)

According to Siwik, around June 25, 2017, Lane told him his candidacy for the position at Akron Children's had been "set aside." (Doc. No. 50-2, Siwik Depo at Tr. 54, 65.)

On June 28, 2017, Tina Salzone, an administrator with Akron Children's, emailed Lane and told him to "encourage [Siwik] to officially apply for the position so that we have his official application on file." (Doc. No. 50-4, Lane Depo. Exh. 13.) Lane informed Ms. Salzone that Siwik had "sent [him] a copy of his lawsuit which does clarify some points." (*Id*.) Lane also

informed Ms. Salzone he had let Siwik know the position was posted for him to officially apply. (*Id*. at Exh. 14.)

On July 3, 2017, Siwik and Lane had a one-on-one meeting at a restaurant. (Doc. No. 50-2, Siwik Depo at Tr. 63.) What transpired at this meeting is in dispute. According to Siwik, Lane told him he was "no longer considered a candidate for the position at Akron Children's at that point in time." (*Id*. at Tr. 65.) Siwik testified Lane explained this was due to the "communication he had with Dr. Saarel and the Cleveland Clinic." (*Id*. at Tr. 66.) Lane disputes Siwik's testimony, asserting at that point in time, "a lawsuit really was not an issue." (Doc. No. 50-3, Lane Depo at 58.)

On July 5, 2017, Siwik emailed Saarel, accusing her of discussing his lawsuit with Lane and concluding "[a]s a result, [his] recruitment [had] been put on hold and ads [were] placed for the Akron position in other venues." (Doc. No. 50-5, Saarel Depo at Tr. 250, Doc. No. 50-6, Saarel Depo Exh. 40.) Saarel did not respond to this email. (Doc. No. 50-5, Saarel Depo at Tr. 250.)

On July 20, 2017, Siwik emailed Lane. (Doc. No. 50-2, Siwik Depo at Tr. 45.) Siwik testified this email was "a last-ditch attempt to try to avoid" his ex-wife moving his son to Rhode Island. (*Id*. at 47.)

This email read as follows:

Dear John:

I'm sorry to bother, but I felt obligated to reach out one last time before my initial hearing in the Domestic Relations Court on July 25th. As you know, it involves Camden being able to relocate to Rhode Island and the best, and possibly only, way I can forestall that is to be able to demonstrate I will be employed in the Cleveland area shortly. I understand that isn't necessarily Akron's problem, but I believe that CCF's actions with regards to my

candidacy with them, and now with you, were wrong and likely unlawful. And again, all I asked for was a fair opportunity to do what I have done competently, and with alacrity, for 20 years now.

Anyways, if you can figure out a way to help me, I'd be grateful. It'll be heartbreaking for me to have Camden move as a consequence of their actions.

Thanks for your consideration and honesty. Just for your records, I attached a recommendation letter that was ironically sent to Tess last year on my behalf when I asked to be considered for a general cardiology position at Hillcrest. Also, given CCF's recent actions, my complaint in Federal court is being amended. Since I provided you a copy of the initial complaint, I'm going to forward you what is being added.

Thanks again for your time.

Ernie.

(*Id.* at Exh. E). Attached to this email was an amended complaint Siwik had drafted. (*Id.*) This complaint included allegations Lane had told Siwik his "candidacy had been set aside for the time being because he and Akron Children's Hospital had been notified by the Cleveland Clinic Foundation" of the lawsuit. It further alleged Lane told Siwik "Akron Children's now needed to be 'more deliberate' giving CCF's 'alerts,' and that he could not foresee when those circumstances may change." (*Id.*) Lane denies making the statements contained in this complaint. (Doc. No. 50-3, Lane Depo at Tr. 127-129.)

Ultimately, Akron Children's did not offer Siwik a position. (*Id.* at Tr. 44.) Lane testified Akron Children's declined to hire Siwik after he quoted conversations between him and Lane in his amended complaint. (*Id.* at Tr. 101-102.) Lane asserts Siwik "quoted me extensively out of context" and he viewed this as a "betrayal." (*Id.* at Tr. 102.) Lane shared this email with the executive vice president and chief medical officer of Akron Children's, who advised Lane to break off all communication with Siwik. (*Id.* at Tr. 103, 148.)

On September 19, 2017, Siwik filed a second EEOC charge against the Cleveland Clinic. (Doc. No. 50-8, Siwik Depo, Exh. NN.) Within this charge, Siwik made allegations regarding the Hillcrest position and the Akron Children's position. (*Id.*) He also asserted Akron Children's had retaliated against him for filing a lawsuit against the Cleveland Clinic. (*Id.*)

### III. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed-show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed. R. Civ. P. 56(c)). *See also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

14

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *See Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *United States v. Hodges X–Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox,* 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249–50 (citation omitted). General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

However, an unusual situation is created when cross motions for summary judgment are

filed. As the Sixth Circuit has explained, the reviewing court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *B.F. Goodrich Co. v. U.S. Filter Corp.,* 245 F.3d 587, 592 (6th Cir. 2001)(citing *Taft Broadcasting Co. v. United States,* 929 F.2d 240, 241 (6th Cir. 1991).). Accordingly, "if it is possible to draw inferences in either direction, then both motions for summary judgment should be denied." *Champion Foodservice, LLC v. Vista Food Exchange, Inc.,* 2016 WL 4468001 at *4 (N.D. Ohio Aug. 24, 2016)(citing *B.F. Goodrich Co.,* 245 F.3d at 592-593.).

## IV. Analysis

### A. The Cleveland Clinic and Dr. Elizabeth Saarel

### 1. Timeliness of federal discrimination claims

The Cleveland Clinic Defendants argue Siwik's federal discrimination claims are time-barred. (Doc. No. 52 at 21-22.) Siwik maintains these claims were either timely filed or "encompassed within the scope of his 2015 charge." (Doc. No. 55 at 16-17.)

A plaintiff alleging employment discrimination must file a timely charge of discrimination with the EEOC before bringing a Title VII or ADEA suit in federal court. *Amini v. Oberlin College*, 259 F.3d 493, 498 (6th Cir. 2001). In a "deferral state," such as Ohio, the plaintiff's suit must be filed within 300 days after the alleged unlawful practice occurred. *Id.* "[T]he starting date for the 300-day limitations period is when the plaintiff learns of the employment decision itself, not when the plaintiff learns that the employment decision may have been discriminatorily motivated." *Id.* at 499. The same 300-day time limit for filing a charge with the EEOC applies in age discrimination cases brought under the ADEA. *Id.*, citing 29

16

U.S.C. § 626(d).

It is undisputed Siwik filed his EEOC charge on November 1, 2015. (Doc. No. 50-8, Siwik Depo, Exh. HH.) However, the parties disagree as to what date triggered the 300 day limitation period for the discrimination claims relating to the interventional cardiologist position. The Cleveland Clinic argues the 300 days began to run in March 2014, when Siwik learned Dr. Suntharos was hired as an interventional cardiologist. (Doc. No. 52 at 22.) Siwik maintains the limitations period did not begin until August 4, 2015,[2] when the Cleveland Clinic rejected him for the position. (Doc. No. 55 at 16.)

The Court finds the limitations period began on August 4, 2015, and thus, Siwik's November 1, 2015 EEOC filing is timely. The Cleveland Clinic posted an ad for an interventional cardiologist position in July 2015. (Doc. No. 50-5, Saarel Depo, Exh. 23.) Siwik promptly responded to this job posting, genuinely thinking he was applying to an open position within the Cleveland Clinic. The Cleveland Clinic's response to his application did not suggest otherwise. Indeed, on August 4, 2015, the Cleveland Clinic emailed Dr. Siwik to thank him for his interest in the position and inform him he did not meet the requisite qualifications. (*Id*. at Tr. 202.) This email, in rejecting him for the position, was when Siwik learned of the employment decision, thereby triggering the 300 day limitation period.

The Cleveland Clinic also argues Siwik's federal discrimination claims pertaining to the position at Hillcrest are time-barred. (Doc. No. 52 at 22.) The Cleveland Clinic asserts Siwik learned "he would not be hired for this position in July 2016, over a year before he filed his

---

[2]     Siwik used the date of July 14, 2015 in his brief. (Doc. No. 55 at 16.) However, this appears to be an oversight, as the Cleveland Clinic did not reject him for the position via email until August 4, 2015. (Doc. No. 50-5, Saarel Depo at Tr. 202.)

second EEOC charge in September 2017." (*Id*.) Siwik disputes this, asserting these discrimination claims were "encompassed within the scope of his 2015 charge." (Doc. No. 55 at 17.)

When filing an EEOC charge, a plaintiff must either (1) explicitly list the claim in the EEOC charge or (2) the claim must reasonably be expected to grow out of the EEOC charge in order to meet the filing requirement. *Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 379 (6th Cir. 2002). *See also McDaniels v. Plymouth-Canton Cmty. Sch*, 2018 WL 5734695, *5 (6th Cir. Nov. 1, 2018). Within the Sixth Circuit, this is referred to as the "expected scope of investigation test" and requires a plaintiff to "have alleged sufficient facts in his or her EEOC complaint to put the EEOC on notice" of other claims which may arise out of the facts supplied. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 490 (6th Cir.2010). "Accordingly, 'where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the Plaintiff is not precluded from bringing suit on that claim.' " *Id*. at 490 (quoting *Weigel*, 302 F.3d at 380.).

The Court finds Siwik's claims of age discrimination with respect to the Hillcrest position could reasonably be expected to grow out of the EEOC charge. As noted *supra*, Siwik filed his first EEOC charge against the Cleveland Clinic on November 1, 2015. (Doc. No. 50-8, Siwik Depo Exh. HH.) Within this charge, Siwik's claims related only to the interventional cardiologist position. (*Id*.) This charge makes no mention of the Cleveland Clinic's decision not to hire him for the Hillcrest position, as it occurred after Siwik filed his EEOC charge. However, Siwik asserted he was discriminated against due to his age in his EEOC charge and attached a letter detailing his belief a younger candidate was selected over him. (*Id*.) Siwik clearly asserted

18

the Cleveland Clinic's hiring practices were discriminatory on the basis of age in his original[3] EEOC charge.  *See Brown v. Magna Modular Systems, Inc.*, 2014 WL 2986928, *3 (N.D. Ohio July 2, 2014).  It would be reasonable for the EEOC to further investigate any additional positions in which a younger candidate was selected over Siwik at the Cleveland Clinic, given his rejections from these positions occurred within a year of each other and involved allegations the Cleveland Clinic was discriminating against older applicants.  *See EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 599 (6th Cir. 2018)("We have developed a broad conception of the sorts of claims that can be 'reasonably expected to grow out of the initial charge of discrimination.'").  Accordingly, Siwik's claims of age discrimination as they relate to the Hillcrest position are not time-barred.

2.      **National Origin Discrimination (Counts One and Five) – The Cleveland Clinic**

In Counts One and Five of the Second Amended Complaint, Siwik alleges federal and state national origin discrimination against the Cleveland Clinic pursuant to Title VII and O.R.C. §4112.02.  (Doc. No. 28 at ¶¶94-98, 117-121.)  Defendant Cleveland Clinic argues it is entitled to summary judgment in its favor with respect to these claims as they are "invalid citizenship claims."  (Doc. No. 52 at 27.)  Cleveland Clinic further asserts summary judgment is appropriate because Siwik has "abandoned these claims in his Opposition."  (Doc. No. 56 at 1.)

Siwik does not directly address the Cleveland Clinic's arguments in his Memorandum in Opposition.  (Doc. No. 55.)  He does not dispute his national origin claims are actually invalid citizenship claims and beyond briefly mentioning "national origin" in two locations in his brief,

---

[3]      As noted *supra*, on September 19, 2017, Siwik filed a second EEOC charge against the Cleveland Clinic.  (Doc. No. 50-8, Siwik Depo, Exh. NN.)  Within this charge, Siwik made allegations regarding the Hillcrest position and the Akron Children's position.  (*Id.*)

does not provide any detailed argument as to these claims. (Doc. No. 55 at 8, 18.). The Court finds Siwik has conceded the Cleveland Clinic is entitled to summary judgment in his favor with respect to these claims. *See Brown v. VHS of Michigan, Inc.*, 545 Fed. App'x 368, 372 (6th Cir. 2013)(a plaintiff "is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."). *See also Flagg v. Staples the Office Superstore East, Inc*., 138 F.Supp.3d 908, 917 (N.D. Ohio Sept. 29, 2015).

Moreover, if the Court were to construe Siwik's brief mention of his national origin claims as an argument, the Cleveland Clinic would still be entitled to summary judgment on these claims. Title VII makes it unlawful for an employer to "fail or refuse to hire" an individual on the basis of national origin. 42 U.S.C. §2000e-2. Ohio law also contains such a prohibition. O.R.C. §4112.02 Both federal and state law claims are analyzed under the same standards and case law. *Norbuta v. Loctite Corp*., 1 Fed. App'x 305, 311 (6th Cir. Jan. 8, 2001). It is well established "national origin" refers to "the country where a person was born, or more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973). It does not include citizenship. *Id* at 88-89. *See also Wilson v. Art Van Furniture*, 230 F.3d 1358 (Table), 2000 WL 1434690, *1 (6th Cir. Sept. 19, 2000). Indeed, neither Title VII or the Ohio Civil Rights Act lists citizenship as a protected class. *Occhione v. PSA Airlines, Inc*., 886 F.Supp.2d 736, 744 (S.D. Ohio Apr. 6, 2012).

Siwik believes he was not hired by the Cleveland Clinic because he is a United States citizen, not because he is of Polish descent. (Doc. No. 50-7, Siwik Depo at Tr. 137.) As such, he is not alleging discrimination due to his membership of a protected class. This is not to say an American plaintiff cannot advance a claim of national origin discrimination. *See Douglas v.*

*Eaton Corp.*, 577 Fed App'x 520, 526 (6th Cir. Aug. 20, 2014). However, as Siwik is asserting discrimination exclusively on the basis of his United States citizenship, not his national origin, his claim must fail.

Accordingly, the Court finds there is no material factual dispute with respect to Siwik's national origin discrimination claims. Therefore, the Cleveland Clinic's motion for summary judgment as to Counts One and Five[4] is GRANTED.

**3.      Age Discrimination (Counts Two and Four) – The Cleveland Clinic**

In Counts Two and Four of the Second Amended Complaint, Siwik asserts federal and state age discrimination claims against the Cleveland Clinic pursuant to 29 U.S.C §623 and O.R.C. §4112.14. (Doc. No. 28 at ¶¶99-103, 113-116.) Defendant Cleveland Clinic argues it is entitled to summary judgment with respect to these claims as Siwik is unable to meet his *prima facie* burden under the *McDonnell Douglas* framework. (Doc. No. 52 at 23-27.)

Siwik argues summary judgment should be denied because he has carried his burden of establishing a *prima facie* case with respect to both the interventional cardiologist and general cardiologist positions. (Doc. No. 55 at 18.)

The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, makes it unlawful for an employer to "fail or refuse to hire" an individual "because of such individual's age[.]" 29 U.S.C. § 623(a)(1). Ohio law also prohibits age discrimination and such claims are "analyzed under the same standards as federal claims brought under the [ADEA]." *Wharton v.*

---

[4]      As noted *supra*, national origin discrimination claims brought under Ohio law are analyzed under the same standards and case law as federal national origin discrimination claims. *Norbuta*, 1 Fed. App'x at 311. Thus, as Siwik cannot meet the burden for his federal national origin discrimination claim (Count One), he also does not meet the burden for his state law national origin discrimination claim (Count Five).

*Gorman-Rupp Co.*, 309 F. App'x 990, 995 (6th Cir. 2009).

A claim under the ADEA may be established by either direct or circumstantial evidence of discrimination. *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005), citing *Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 547 (6th Cir. 2004). "Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Minadeo,* 398 F.3d at 763, quoting *Rowan,* 360 F.3d at 547. Here, Siwik has neither alleged nor provided any direct evidence of age discrimination. Thus, the Court's analysis will focus on circumstantial evidence. Circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler v. White's Fine Furniture,* 317 F.3d 564, 570 (6th Cir. 2003). *See also Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009).

When evaluating circumstantial evidence, the Court applies the evidentiary framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed. 2d 668 (1973) to analyze Siwik's ADEA claims. Under this framework, in order to establish a *prima facie* case of age discrimination in the context of failure to hire, a plaintiff must show (1) membership of a protected class (i.e. over 40 years old); (2) he applied for and was qualified for the position; (3) he was considered for and denied the position; and (4) he was rejected in favor of another person with similar qualifications who was substantially younger. *Viergutz v. Lucent Technologies, Inc.,* 375 Fed. App'x 482, 484 (6th Cir. Apr. 23, 2010). *See also Coburn v. Rockwell Automation, Inc.,* 238 Fed. App'x 112, 128 (6th Cir. June 29, 2007).

If the plaintiff is able to establish a *prima facie* case, a presumption of discrimination arises and "the burden of production shifts to the defendant to articulate a non-discriminatory

reason for its action." *Burzynski v. Cohen*, 264 F.3d 611, 622 (6th Cir. 2001). If defendant is able to articulate a non-discriminatory reason, the burden shifts back to plaintiff to show the provided reason was pretext for age discrimination. *Id.* A plaintiff can prove an employer's stated reason is pretextual by showing either: (1) the reason has no basis in fact; (2) the provided reason was not the actual motivation for the employer's action; or (3) the provided reason was insufficient to motivate the employer's action. *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 725 (6th Cir. 2012). The ultimate burden of producing sufficient evidence from which the jury could reasonably reject an employer's explanation and infer the employer intentionally discriminated against them rests with the plaintiff at all times. *Imwalle v. Reliance Med. Prod., Inc..,* 515 F.3d 531, 545 (6th Cir. 2008).

Here, Siwik asserts age discrimination claims based upon the Cleveland Clinic's failure to hire him for two different positions. For clarity, the Court will also address each position separately under the burden-shifting framework.

### Interventional Cardiologist Position

As noted *supra*, the Cleveland Clinic hired Dr. Suntharos as an interventional cardiologist in 2014. (Doc. No. 50-5, Saarel Depo at Tr. 33, 157.) Dr. Suntharos is a Thai-national and less than 40 years of age. (Doc. No. 28 at 6.) Siwik alleges the Cleveland Clinic discriminated against him on the basis of age by choosing to hire Dr. Suntharos instead of him. (Doc. No. 55 at 8.)

Because Siwik is 55 years old, he is a member of a protected group under the ADEA. (*See* Doc. No. 28 at 1.) It is undisputed the Cleveland Clinic chose to hire a younger individual, Dr. Suntharos, for the interventional cardiologist position. However, Siwik is unable to meet his

*prima facie* burden of showing he is qualified for the interventional cardiologist position. While Siwik is an experienced cardiologist, he did not complete an interventional cardiology fellowship. (Doc. No. 50-7, Siwik Depo at Tr. 130-131.) Siwik concedes these fellowships were available to him during his training, but for various reasons he did not complete one. (*Id.*) The Cleveland Clinic specifically required applicants to have one year of advanced fellowship training in its job posting for the position. (Doc. No. 50-5, Saarel Depo, Exh. 23.) Saarel testified the Cleveland Clinic has required its pediatric interventional cardiologists to have an advanced fellowship training in interventional cardiology for years. (*Id.* at Tr. 38.) Indeed, since 1996, the Cleveland Clinic has not hired any interventionalists who have not completed this fellowship. (Doc. No. 52-3, *Declaration of Lourdes Prieto, MD*.) Siwik has not offered any evidence[5] to dispute this requirement, such as other pediatric interventional cardiologists at the Cleveland Clinic who have not completed this fellowship.

The record is clear Siwik did not meet the posted qualifications the Cleveland Clinic was looking for when it sought to hire an interventional cardiologist. While Siwik argues a jury could look at his resume and determine his training would "suffice," his "subjective view of [his] qualifications in relation to those of other applicants, without more, cannot sustain a claim of discrimination." *Hedrick v. W. Res. Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004). *See also*

---

[5]     Siwik directs this Court's attention to a clinical privileges application he submitted to the Cleveland Clinic in 2013. (Doc. No. 55 at 10.) Within this application, the Cleveland Clinic required its applicants to either have completed a fellowship in pediatric cardiology or "other training deemed equivalent by the Department Chair" in order to be "eligible to apply for core privileges/procedures in pediatric interventional cardiology." (Doc. No. 55-10 at 2.) However, this application only contains criteria for clinical privileges, not the hiring criteria for an interventional cardiologist. Moreover, the actual posting to which Siwik applied did not contain any language regarding equivalent training. (Doc. No. 50-5, Saarel Depo, Exh. 23.)

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584-585 (6th Cir. 1992).  Though Siwik maintains the

Cleveland Clinic should have used different selection criteria and considered the breadth of his

interventional cardiology experience, it is not this Court's role to second-guess the facially

legitimate criteria used by the Cleveland Clinic in selecting interventional cardiologists.  *Somogy*

*v. S.E. Local Sch. Dist. Bd. of Educ.*, 2007 WL 2572173, *8 (N.D. Ohio Aug. 31, 2007).

Assuming, *arguendo*, Siwik could establish his *prima facie*[6] case, the Cleveland Clinic

has articulated a legitimate, non-discriminatory reason for not selecting him for the interventional

cardiologist position – namely, he did not have the requisite interventional fellowship.

In response, Siwik fails to present any actual argument to establish pretext.  (*See* Doc. No.

55 at 19-20.)  Siwik references a March 2014 email (hereinafter, "the March 2014 email") from

Dr. Prieto, in which she informed Siwik she was selecting Dr. Suntharos for several reasons, one

being he "is young and ambitious academically."  (Doc. No. 50-5 at Exh. 21.)  This does not

establish pretext.  *See Weigel*, 302 F.3d at 379 (finding an isolated remark about an employee's

age to not demonstrate any age-related animus in the decision not to rehire).  While Dr. Prieto

made a passing reference to Dr. Suntharos' age, she also touted his academic accomplishments

(including his fellowship training), technical skills, creativity, work ethic, and clinical skills.

Indeed, Dr. Prieto specifically states in her email "I have trained many fellows over my last 17

---

[6]    The Cleveland Clinic also argues Siwik also cannot meet his *prima facie* burden
because the "position was not an open position for which [the Cleveland Clinic] was seeking
applicants."  (Doc. No 52 at 23.)  The Cleveland Clinic asserts the interventional cardiologist ads
were made "to satisfy the labor market-testing component of Dr. Suntharos's green card
application."  (*Id.*)  Cleveland Clinic maintains it did not hire anyone for this spot after posting
the ad.  However, the Cleveland Clinic did post an ad for a cardiologist position, to which Siwik
applied.  Regardless, as the Court is finding Siwik is not qualified for the position, he cannot
establish his *prima facie* case under the *McDonnell Douglas* framework.

years at a cath attending here, and this guy is the best I have ever seen." (Doc. No. 50-5 at Exh. 21.) An employer is permitted to make hiring decisions "based on its familiarity and personal relationships with candidates." *McDaniels*, 2018 WL 5734695 at *6. The March 2014 email does not establish the Cleveland Clinic's provided reason had "no basis in fact," or was not sufficient or the actual reason to motivate them to decline to hire Siwik. *See Lefevers*, 667 F.3d at 725. Rather, it supports the Cleveland Clinic's position it wanted a cardiologist who had completed an interventional cardiology fellowship, a requirement Siwik did not meet, but Dr. Suntharos did.

Accordingly, Siwik cannot show the Cleveland Clinic failed to hire him for the position in favor of a younger person with similar or inferior qualifications to permit an inference of age discrimination.

### General Cardiologist Position at Hillcrest

On September 12, 2016, the Cleveland Clinic hired a general pediatric cardiologist, Dr. Challapudi, at its Hillcrest location on September 12, 2016. (Doc. No. 50-5, Saarel Depo at Tr. 152.) Neither party disputes Siwik is qualified for a position as a general cardiologist. (Doc. No. 52 at 25-27; Doc. No. 55 at 5.) What is in dispute is whether Siwik actually applied for this position. The Cleveland Clinic argues Siwik "never formally applied," having instead "informally expressed interest in the position by e-mailing Dr. Saarel." (Doc. No. 52 at 25.) Siwik maintains he contacted Saarel as soon as he became aware of the position and before any hiring decisions were made.[7] (Doc. No. 55 at 19.)

---

[7]     Siwik also asserts he had "repeatedly notified the Clinic over a period of years, including reaching out to Dr. Prieto, Dr. Piedimonte and Dr. Saarel, that he was interested in any and all pediatric cardiology positions at the Clinic." (Doc. No. 55 at 19.) However, this does not

Upon review of the record, the Court finds Siwik did apply for the position. Siwik saw an ad for this position in Congenital Cardiology Today, a cardiology journal. (Doc. No. 50-7, Siwik Depo at Tr. 152-153.) Upon seeing this ad, Siwik "immediately contacted the contact information" contained within this ad. (Doc. No. 50-7, Siwik Depo at Tr. 153.) Email records confirm Siwik emailed Victoria Thomas, an administrative assistant at the Cleveland Clinic, on July 1, 2016, with his CV, requesting she forward it to Saarel. (Doc. No. 50-8, Siwik Depo Exh. LL.) Moreover, Siwik emailed Saarel directly, specifically stating "I'd like to be considered for the full-time cardiology position." (Doc. No. 50-8, Siwik Depo, Exh. KK.) While Siwik did not submit an application through the Cleveland Clinic's website, the Cleveland Clinic solicited applications through different modalities, including an ad in a cardiology journal, to which Siwik responded. As Siwik's burden to establish a *prima facie* case is not an onerous one, the Court concludes he has satisfied the application requirement. *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001).

However, Siwik has not provided any evidence to support the final prong in his *prima facie* case, that he was rejected in favor of a younger person with similar or inferior qualifications. *George v. Youngstown State Univ.*, 2019 WL 118601, *7 (N.D. Ohio Jan. 7, 2019). Siwik summarily asserts he has "made out a *prima facie* claim for discrimination related to the pediatric cardiologist position at Hillcrest." (Doc. No. 55 at 19.) However, Siwik has provided no argument or evidence regarding Dr. Challapudi's age or qualifications. Indeed,

_____

constitute applying for a position in the context of his *prima facie* case. *See Talbot v. Cuyahoga Cty. Bd of Mental Retardation & Dev. Disabilities*, 2009 WL 312941, *9 (N.D. Ohio Feb. 6, 2009)("previously expressed interest in the same or similar position is not sufficient when a formal application process exists.").

neither party had provided the Court with Dr. Challapudi's age, and thus no inference of age discrimination has been created. Moreover, Siwik has offered no evidence to suggest Dr. Challaphudi was not qualified or his qualifications were inferior to his in some respect.

Assuming, *arguendo*, Siwik established a *prima facie* case, the Cleveland Clinic has articulated several legitimate, non-discriminatory reasons for not selecting him for the general cardiologist position at Hillcrest. Saarel explained she declined to hire Siwik for the Hillcrest position because (1) she was under time constraints to fill the position; (2) she already identified a candidate who the Cleveland Clinic had previously interviewed and had a competing job offer; and (3) she was unable to schedule additional interviews due to her travel schedule. (Doc. No. 52 at 26.)

Siwik fails to present sufficient evidence tending to show the Cleveland Clinic's proffered reasons for not hiring him were pretext for age discrimination. Siwik suggests that, because Saarel did not provide these same reasons to Dr. Zahka during her conversation with him, this is "evidence of pretext." (Doc. No. 55 at 21) However, Saaral was not required to report her hiring rationales to Dr. Zahka, and Siwik has offered no evidence Saaral has indicated, at any point, that the decision was based upon Siwik's age. Siwik is unable to establish the Cleveland Clinic's provided reasons had "no basis in fact" or were insufficient to explain why the Cleveland Clinic did not hire him. *See Lefevers*, 667 F.3d at 725.

Siwik also asserts there is "no evidence in the record that any 'time constraints' existed." (Doc. No. 55 at 21.) Siwik contends if time constraints were truly an issue, the Cleveland Clinic should have hired him, an experienced cardiologist already licensed in Ohio. (*Id.*) While this establishes Siwik was qualified for the position for the purposes of establishing a *prima facie*

case, it does not show the Cleveland Clinic's reason for not hiring him was pretextual. Saarel explained to Siwik she had "already had a candidate I[sic] in the pipeline when [he] first contacted [her] about the position." (Doc. No. 50-6, Saarel Depo, Exh. 34.) The Cleveland Clinic was free to chose a candidate they had already vetted and interviewed, as long as the decision was not based on an impermissible factor, such as age. *Mansfield v. City of Murfreesboro*, 706 F. App'x 231, 239 (6th Cir. 2017) ("[E]mployers are generally free to choose among qualified candidates in making their employment decisions.") (internal quotation marks omitted). Siwik has not produced[8] any evidence connecting his non-hire at Hillcrest to his age.

Finally, Siwik argues "also without legal justification is Dr. Saarel's suggestion that she did not hire Dr. Siwik because he seemed 'angry' with the Clinic." (Doc. No. 55 at 21.) However, neither the Cleveland Clinic nor Saarel have asserted this was one of the reasons Siwik was not hired at Hillcrest. (*See* Doc. No. 52 at 26.) Saarel testified during her August 24, 2016 phone conversation with Siwik, she was struck by how "strong [Siwik's] anger and bitterness was towards the Cleveland Clinic" during the conversation. (Doc. No. 50-5, Saarel Depo at Tr. 176.) However, Saarel had already offered the Hillcrest position to Dr. Challapudi prior to July 14, 2016, over a month before this conversation. (Doc. No. 50-6, Saarel Depo, Exh. 34.) Thus, any anger Siwik had conveyed to Saarel occurred after the hiring decision had already been made.

Accordingly, Siwik has failed to meet his burden of establishing a material fact dispute with respect to his age discrimination claims. Therefore, the Cleveland Clinic's motion for

---

[8] The Court notes the bulk of Siwik's pretext arguments pertain to his claims the Cleveland Clinic retaliated against him for his EEOC charge. (*See* Doc. No. 55 at 21.) This is a separate claim with a distinct legal frame work and it will be addressed at greater length *infra*.

summary judgment as to Counts Two and Four is GRANTED.[9]

**4.      Retaliation (Counts Three and Six) – The Cleveland Clinic**

In Counts Three and Six of the Second Amended Complaint, Siwik alleges federal and

state retaliation claims against the Cleveland Clinic pursuant to 29 U.S.C §623 and O.R.C.

§4112.02, respectively.  (Doc. No. 28 at ¶¶104-112, 122-128.)  Defendant Cleveland Clinic

argues it is entitled to summary judgment in their favor with respect to these claims as Siwik is

unable[10] to meet his *prima facie* burden under the *McDonnell Douglas* framework.  (Doc. No. 52

at 28-30.)  Siwik argues summary judgment should be denied because he has carried his burden

of establishing a *prima facie* case with respect to both the position at Hillcrest and Akron

Children's Hospital.  (Doc. No. 55 at 22-23.)

The ADEA and Title VII both prohibit employers from retaliating against a person for

opposing or reporting discrimination.  29 U.S.C. § 623(d), 42 U.S.C. §2000e-3(a).  Ohio law

contains a similar prohibition.  Ohio Rev. Code § 4112.02(I).  To establish a *prima facie* case of

---

[9]  As noted *supra*, age discrimination claims brought under Ohio law are "analyzed under the same standards as federal claims brought under the [ADEA]." *Wharton v. Gorman-Rupp Co.*, 309 F. App'x 990, 995 (6th Cir. 2009).  Thus, as Siwik cannot meet the burden for his federal age discrimination claim (Count Three), he also does not meet the burden for his state law age discrimination claim (Count Four).

[10]  The Cleveland Clinic also argues Siwik's federal retaliation claims which involve the Hillcrest position are time-barred.  (Doc. No. 52 at 28.)  Because the Court has found Siwik's claims of age discrimination are timely, the Court also finds Siwik's Hillcrest retaliation claims, which stem from the 2015 EEOC charge alleging age discrimination, are also timely.  Indeed, the expected scope of investigation test is most often used for retaliation claims because "retaliation naturally grows out of any underlying substantive discrimination charge." *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 833 (6th Cir. 1999). *See also Watson v. Ohio Dep't of Rehab. & Corr.*, 690 F. App'x 885, 890 (6th Cir. 2017)(citing *Weigel*, 302 F.3d at 380.); *George*, 2019 WL 118601 at *6.

retaliation under either federal or Ohio law, a plaintiff must show (1) he engaged in a protected activity, (2) the defendant was aware plaintiff had engaged in such activity, (3) defendant took an adverse employment action against plaintiff, and (4) a causal connection between the protected activity and the defendant's adverse action. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 288 (6th Cir. 2012). *See also Grant v. Metro. Gov't of Nashville and Davidson Cty*, 2018 WL 6787539, *1 (6th Cir. Dec. 26, 2018). A plaintiff cannot "invoke the protections of the Act by making a vague charge of discrimination." *Blizzard*, 698 F.3d at 288. However, the task of establishing a *prima facie* case in a retaliation action is not an onerous burden, but one which can be easily met. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

Once a plaintiff has established a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non discriminatory reason for the adverse employment action. *Nguyen*, 229 F.3d at 562. The plaintiff must then show the defendant's proffered reason is pretextual and "the real reason for the employer's action was intentional retaliation." *Imwalle*, 515 F.3d at 544.

### *General Cardiologist Position at Hillcrest*

The parties dispute only the fourth element of the *prima facie* case of retaliation – whether there is a causal connection between the Cleveland Clinic's decision not to hire Siwik and the 2015 EEOC charge. (Doc. No. 52 at 28-29; Doc. No. 55 at 22.) Siwik argues statements[11] Dr. Saarel made to Dr. Zahka and himself regarding his EEOC charge demonstrates

---

[11] The Cleveland Clinic asserts portions of the evidence Siwik relies upon are inadmissable hearsay. (Doc. No. 52 at 30.) A court cannot consider hearsay evidence when ruling on a motion for summary judgment. *See Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) ("[H]earsay evidence cannot be considered on a motion for summary judgment."). *See also Pickens v. MetalTek International, Inc.*, 2018 WL 6567794, Fn 3 (N.D. Ohio Dec. 13, 2018). However, if a statement falls within an exception pursuant to Federal Rule of Evidence 801, it is admissible and a court may consider it when evaluating a motion for summary

causality.  (Doc. No. 55 at 22.)  The Cleveland Clinic argues no causal connection has been

established.  (Doc. No. 52 at 29, 30.)

 The Court finds an issue of material fact exists as to whether there was a causal

connection between Siwik's protected activity (i.e., the EEOC charge) and the Cleveland Clinic's

decision not to hire him for the Hillcrest position.  Around the time Siwik applied for the position

---

judgement.  *See Bradley v. Rhema-Northwest Operating, LLC*, 2017 WL 4804419, *2 (6th Cir. Oct. 3, 2017).

 Here, the Cleveland Clinic maintains Siwik's testimony that Dr. Zahka told him Saarel stated Siwik's "EEOC complaint would likely be a deal-breaker with regards to employment at the Cleveland Clinic" is inadmissable hearsay.  (Doc. No. 52 at 30, Doc. No. 50-7, Siwik Depo at Tr. 168.)  Siwik argues this statement is admissible as a party opponent admission under Fed. R. Evid. 801(d)(2)(D).  (Doc. No. 55 at 23.)  This rule provides statements "offered against an opposing party" are not hearsay if "made by the party's agent or employee on a matter within the scope of that relationship and while it existed."  Fed. R. Evid. 801(d)(2).  The relevant inquiry is whether the statement "concerns a matter within the scope of the declarant's employment—there is no requirement that a declarant be directly involved in the adverse employment action."  *Back v. Nestle USA, Inc.*, 694 F.3d 571, 577 (6th Cir. 2012).

 The facts presented here are on all fours with the circumstances in *Bradley v. Rhema-Northwest Operating, LLC,* 2017 WL 4804419 (6th Cir. Oct. 3, 2017).  In *Bradley*, a employee asserted age discrimination claims against her employer.  To support her claims, the employee presented her own testimony that she was told by other employees of an administrator's statements regarding his desire to "get rid of older people in the company."  *Id*. at *2.  The employee was not present when the administrator made these statements.  *Id*.  The Sixth Circuit concluded the employee's testimony was double hearsay and rejected the argument this testimony was an opposing party statement pursuant to Fed. R. Evid. 801(d)(2).  *Id*.  The Sixth Circuit reasoned while it may have been within the scope of the administrator's employment to fire personnel, it was not within the scope of employment of those individuals who relayed this information to the employee.  *Id.* at *2-3.  The Sixth Circuit concluded it was proper to exclude these statements as inadmissable hearsay.  *Id.* at *3.

 Here, while the decision of whether or not to hire Siwik was within the scope of Saarel's employment with the Cleveland Clinic, Siwik has offered no evidence cardiologist hiring or personnel decisions were in any way within the scope of Dr. Zahka's employment.  Thus, the Court concludes Siwik's testimony as to Dr. Zahka's statements are inadmissable hearsay and will not consider it when ruling on the motions for summary judgment.

in July 2016, Saaral spoke with Dr. Zahka, a cardiologist at the Cleveland Clinic, regarding hiring Siwik for the Hillcrest position. (Doc. No. 50-5, Saarel Depo at Tr. 169.) What transpired during the conversation between Saarel and Dr. Zahka is in great dispute. Within a sworn affidavit,[12] Dr. Zahka asserts Saaral indicated she was "not open to hiring [Siwik] and that his claims against the Cleveland Clinic were an issue." (Doc. No. 55-11, *Declaration of Kenneth Zahka, M.D.*) Moreover, Siwik testified Saarel told[13] him his candidacy for the position was a "nonstarter" due to his EEOC charge. (Doc. No. 50-7, Siwik Depo at Tr. 178.) A causal connection is established when the plaintiff "proffer[s] evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *DePalma v. Sec'y of Air Force*, 2018 WL 5304814, *6 (6th Cir. Oct. 25, 2018), quoting *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588 (6th Cir. 2009). Here, Siwik has presented evidence which, if believed by a factfinder, raises such an inference.

The Cleveland Clinic argues there is "substantial evidence to undermine causality." (Doc. No. 52 at 29.) In support of this argument, the Cleveland Clinic notes: (1) the seven month gap between the EEOC charge and Siwik's rejection; (2) Saarel was not employed by the Cleveland Clinic at the time of the circumstances giving rise to the EEOC charge; and (3) Saaral contacted Akron Children's, informing them Siwik was looking for a position. (*Id.*) However,

---

[12]    While the Cleveland Clinic admonishes this affidavit for being "vague," it does not argue it is inadmissible hearsay. (Doc. No. 56 at 8.)

[13]  Because these statements were allegedly made by Dr. Saarel concerning a matter within the scope of her employment, they would plainly fall under Federal Rule of Evidence 801(d)(2)(D) as being outside the definition of hearsay. *See* Fed. R. Evid. 80l(d)(2)(D) ("A statement that meets the following conditions is not hearsay: . . . [t]he statement is offered against an opposing party and: . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed . . . ").

while it had been seven months since Siwik filed his EEOC charge, the charge remained pending at the time of his application for the Hillcrest position. Moreover, Saarel stepped into her role at the Cleveland Clinic in October 2015, which was prior to Siwik filing his November 1, 2015 EEOC charge. Thus, even if Saarel was not present for the circumstances giving rise to the charge, she was the chair of pediatric cardiology when it was filed. (Doc. No. 50-5, Saarel Depo. at Tr. 21, 34; Doc. No. 50-8, Siwik Depo, Exh. HH.) While the Cleveland Clinic's arguments attack the weight of Siwik's allegations, this is an issue for a factfinder to consider, not for a summary judgment determination.

The Court finds the Cleveland Clinic has provided a legitimate, nondiscriminatory reason for its failure to hire Siwik for the Hillcrest position. Saarel explained she declined to hire Siwik for the Hillcrest position because (1) she was under time constraints to fill the position; (2) she had already identified a candidate who was a finalist for a similar position, who had a competing job offer; and (3) she was unable to schedule additional interviews due to her travel schedule. (Doc. No. 52 at 26.)

Therefore, Siwik must show these preferred reasons (1) have no basis in fact; (2) did not actually motivate the adverse action; or (3) were insufficient to explain the adverse action. *See Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014). A plaintiff must produce "sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant[ ] ... did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493–94 (6th Cir. 2001)(internal citations omitted).

The Court finds Siwik has presented sufficient evidence tending to show the Cleveland

Clinic's proffered reasons for not hiring him were pretext[14] for retaliation. Siwik testified that, during an August 24, 2016 phone conversation, Saarel told him his candidacy for the position was a "nonstarter" due to his EEOC charge. (Doc. No. 50-7, Siwik Depo at Tr. 178.) Moreover, the sworn affidavit of Dr. Zahka contends Saarel told Dr. Zahka she was "not open to hiring [Siwik] and that his claims against the Cleveland clinic were an issue." (Doc. No. 55-11, *Declaration of Kenneth Zahka, M.D.*)

The Cleveland Clinic argues[15] "Dr. Zahka's vague affidavit is not probative of pretext." (Doc. No. 56 at 8.) Dr. Zahka's affidavit, in pertinent part, provides as follows:

> Sometime after Dr. Saarel become the Chairman of the Department of Pediatric Cardiology at the Cleveland Clinic in 2015, I spoke to her and asked her to consider hiring Dr. Siwik to work for the Cleveland Clinic. She communicated to me that she was not open to hiring him and that his claims against the Cleveland Clinic were an issue. I do not recall her exact words. Other than referring to Dr. Siwik's claims against the Cleveland Clinic, I do not recall her mentioning his professional qualifications or any other reasons she would not hire him. I told Dr. Siwik about my conversation with Dr. Saarel shortly after it occurred.

(Doc. No. 55-11, *Declaration of Kenneth Zahka, M.D.*) The Cleveland Clinic observes this affidavit does not provide 1) the date of the conversation, 2) whether the discussion was in regards to the Hillcrest position, 3) any specific reference to an EEOC claim or other legal claim, or 4) an allegation Dr. Saarel refused to hire Siwik because of his EEOC claim. (Doc. No. 56 at

---

[14]  Siwik has offered other arguments of pretext, including Dr. Saarel's "changing explanations," the lack of evidence that any time constraints existed, and Siwik's apparent anger. (Doc. No. 55 at 21.) However, the Court does not find these persuasive, as discussed *supra*.

[15]  The Cleveland Clinic does not argue this affidavit is inadmissable hearsay. (Doc. No. 56 at 8.) Arguments not raised are deemed waived. *Giesse v. Sec'y of Dept. of Health & Human Servs.*, 522 F.3d 697, 705 (6th Cir. 2008) (citing *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 544 n. 8 (6th Cir. 2002) ("It is well established that an issue not raised in a party's briefs may be deemed waived.").

8, 9.) The Court is not persuaded by these arguments. While the affidavit does not explicitly list the date or which position Saarel and Dr. Zahka discussed, Saarel's own testimony establishes Dr. Zahka approached Saarel about hiring Siwik for the Hillcrest position in July 2016. (Doc. No. 50-5, Saarel Depo at Tr. 169.) Moreover, while the affidavit references "claims," rather than EEOC charges, the Court finds the suggestion this could have been "just references to Plaintiff's generalized unhappiness with" the Cleveland Clinic dubious. (*See* Doc. No. 56 at 9.)

Furthermore, Siwik testified Saarel told him his EEOC charges were an issue during an August 24, 2016 phone call. (Doc. No. 50-7, Siwik Depo at Tr. 178.) The Cleveland Clinic attempts to discredit this testimony, noting an email sent by Saarel the same date did not reference the EEOC charge. (Doc. No. 56 at 10, Doc. No. 50-7, Siwik Depo at Tr. 177-178.) However, this email does not disprove Siwik's assertion Saarel had discussed his EEOC charge with him over the phone.

When viewing the evidence in a light most favorable to Siwik, a jury could conclude the Cleveland Clinic did not want to consider Siwik for the Hillcrest position due to his 2015 EEOC charge, especially if the jury were to believe Siwik's assertion Saaral had told him as much. Thus, whether the Cleveland Clinic retaliated against Siwik is a fact question to be decided at trial. Therefore, on this basis alone, summary judgment is not appropriate.

### *Position at Akron Children's Hospital*

With regard to the position at Akron Children's Hospital, the parties dispute the third element of the *prima facie* case of retaliation – whether Saarel informing Lane of Siwik's lawsuit constitutes an "adverse employment action." (Doc. No. 52 at 31; Doc. No. 55 at 23.) Siwik argues "Saarel took an adverse action when she telephoned Dr. Lane and told him Dr. Siwik was

suing the Clinic."  (Doc. No. 55 at 23.)  The Cleveland Clinic maintains Saarel informing Lane of

the lawsuit was "benign" and made during "a social conversation between colleagues . . .

unrelated to [Siwik's Akron Children's Hospital] candidacy."  (Doc. No. 52 at 31.)

     A plaintiff in a Title VII action may bring suit against a former[16] employer for

postemployment actions allegedly taken in retaliation for filing of an EEOC claim.  *Robinson v.*

*Shell Oil Co.*, 519 U.S. 337, 341-345 (1997).  In order to establish an "adverse action," a plaintiff

"must show that a reasonable employee would have found the challenged action materially

adverse, 'which in this context means it well might have dissuaded a reasonable worker from

making or supporting a charge of discrimination.'"  *Burlington N. & Santa Fe Ry. Co. v. White*,

548 U.S. 53, 68 (2006)(quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006).).  A

former employer providing a negative job reference to a prospective employer can constitute an

adverse employment action.  *James v. Metro. Gov't of Nashville*, 243 Fed. App'x 74, Fn 1 (6th

Cir. 2007).  *See also Abbott v. Crown Motor Co.*, 348 F.3d 537, 543 (6th Cir.2003); *Taylor v.*

*Geithner*, 703 F.3d 328, 339 (6th Cir. 2013); *Bryant v. Central Cmty Health Board*, 2017 WL

1164345, *5 (S.D. Ohio Mar. 29, 2017)(finding a former employer's email to a current employer

regarding a plaintiff's work abilities constitutes an adverse action).

     The Court finds Siwik has established the existence of an adverse employment action.

Siwik filed his lawsuit against the Cleveland Clinic on May 22, 2017.  (Doc. No. 1.)  In late May

or early June 2017, Sarrel told Lane that Siwik had filed a lawsuit against the Cleveland Clinic.

(Doc. No. 50-3, Lane Depo at Tr. 50.)  Following this conversation, Lane informed the executive

---

[16]    The Supreme Court has not specifically defined "former employer" or "former
employee."  However, it has unequivocally held "former employees are included within §
704(a)'s [of Title VII] coverage."  *Robinson*, 519 U.S. at 346.

vice president and the chief medical officer of Akron Children's Hospital of the lawsuit. (*Id.* at

Tr.53.) According to Lane, he notified these individuals because Akron Children's was "in the

process of considering Dr. Siwik for a position" and he did not know if this information was

"relevant or not." (*Id.* at 54.)

The Cleveland Clinic characterizes Saarel's remark as a "brief mention" made during a

social conversation between Lane and Saarel. (Doc. No. 52 at 31.) According to Saaral, she did

not suggest or imply Akron Children's should not hire Siwik and the conversation was not

regarding his candidacy with Akron Children's. (Doc. No. 50-5, Saarel Depo at Tr. 270.)

However, the Supreme Court has recognized actions typically construed as nonmaterial could

rise to the level of an adverse employment action when considered in context. *See Burlington N.*

*& Santa Fe Ry. Co.*, 548 U.S. at 69. This conversation occurred just after Siwik had filed his

lawsuit against the Cleveland Clinic and during the time in which Akron Children's was

considering him for position. Moreover, the Cleveland Clinic and Akron Children's Hospital had

some degree of a collaborative relationship with pediatric cardiology cases in the area. (Doc. No.

50-5, Saarel Depo at Tr. 240-242.) Following this conversation, Lane informed the executive

vice president and the chief medical officer of Akron Children's of the lawsuit. (Doc. No. 50-3,

Lane Depo at Tr. 53.) Lane notified these individuals because Akron Children's was "in the

process of considering Dr. Siwik for a position" and he was not certain if this information was

"relevant or not." (*Id.* at Tr. 54.) Taking all of this into context, a reasonable employee could

view Saarel's conversation with Lane as an adverse action. Accordingly, Siwik has met his

burden as to this element of his *prima facie* case. *See White v. Adena Health Sys.*, 2018 WL

3377087, *8 (S.D. Ohio July 11, 2018)(a representative from a former employer informing a

prospective employer about a lawsuit qualifies as a negative job reference and adverse action).[17]

The Court also finds Siwik has met his burden as to the fourth element[18] of his *prima facie* case – a causal connection existed between Siwik's protected activity (i.e., his EEOC charge and related lawsuit) and the Cleveland Clinic's adverse action (i.e. Saarel's decision to mention the lawsuit to Lane). In May 2017, Saarel became aware of Siwik's lawsuit against the Cleveland Clinic. (Doc. No. 50-5, Saarel Depo at Tr. 235, Doc. No. 50-6, Saarel Depo, Exh. 39.) Shortly thereafter, Saarel told Lane about Siwik's lawsuit. (Doc. No. 50-3, Lane Depo at Tr. 50.)

---

[17]     The Cleveland Clinic references two cases which have reached the opposite conclusion – *Lamarch v. Tishman Speyer Prop., L.P,* 2006 U.S. Dist. LEXIS 101813 (E.D.N.Y July 12, 2006) and *Matthews v. Wisconsin Energy Corp*, 534 F.3d 547, 559 (7th Cir. 2008). (Doc. No. 56 at 13, Doc. No. 52 at 31.) However, neither of these cases are binding precedent upon this Court. The Cleveland Clinic has not directed this Court to, nor has the Court located, any binding authority holding a mention of a EEOC lawsuit cannot be considered an adverse employment action in any context.

[18]     The Cleveland Clinic argues in order to establish his *prima facie* case, Siwik must show a causal connection existed between Saarel's comments to Lane and Akron Children's decision not to hire Siwik for a cardiologist position. (Doc. No. 52 at 32, Doc. No. 56 at 13,14.) The Cleveland Clinic directs this Court's attention to *Nichols v. Snow*, 2006 WL 167708, *18 (M.D. Tenn. Jan. 23, 2006) in support. In *Nichols*, the Middle District of Tennessee held in order to establish a *prima facie* case of retaliation because of a negative job reference, a plaintiff must "raise an inference" the negative job reference contributed to the prospective employer's decision not to hire plaintiff. *Id.*

However, this is a misinterpretation of the law. Indeed, in *Abbott v. Crown Motor Co., Inc*., the Sixth Circuit held to establish a causal connection, a plaintiff "must produce sufficient evidence from which one could draw an inference that the employer would not have taken the adverse action against the plaintiff had the plaintiff not engaged in activity that Title VII protects." 348 F.3d 537, 543 (6th Cir. 2003). In *Abbott*, the Sixth Circuit found a former employer's poor job reference constituted an adverse employment action, and such job reference created "a genuine issue of material fact as to whether [the former employer] would have given plaintiff such an unfavorable job recommendation had plaintiff not engaged in protected activity." *Id* at 544.. The Southern District of Ohio recently used this same approach in *White v. Adena Health Sys.*, 2018 WL 3377087, *8 (S.D. Ohio July 11, 2018), finding a plaintiff must show a former employer "would not have given negative job references [to a prospective employer] in the absence of protected activity." The Court notes Siwik has failed to address this issue entirely.

This occured during the same time frame Akron Children's was considering Siwik for a position and Saarel was aware Siwik was seeking employment in Northeast Ohio. (Doc. No. 50-3, Lane Depo at Tr. 63, 72, Exh. 3, 4.) This evidence raises an inference that but for Siwik's lawsuit and EEOC charges against the Cleveland Clinic, Saarel would not have mentioned this protected activity to Lane. *See Taylor v. Geithner*, 703 F.3d 328, 339-340 (6th Cir. 2013)(An employee established the causation element of a *prima facie* case of retaliation, where, at the same time and shortly after the employee filed discrimination-based complaints, she was rejected from other positions within her employer and, when requesting a recommendation from her unit supervisor, was given a negative reference.).

The Cleveland Clinic argues[19] Saarel had no retaliatory intent, as she gave Siwik a "positive reference when she referred him to Dr. Lane for" opportunities at Akron Children's in November 2016. (Doc. No. 56 at 13, Doc. No. 50-3, Lane Depo at Tr. 63, 72, Exh. 3, 4.) However, this fact does not negate evidence that Saarel informed Lane of the lawsuit within weeks of becoming aware of it. Moreover, at the time Saarel had referred Siwik to Akron Children's for employment opportunities, Siwik had not yet filed his lawsuit against the Cleveland Clinic and his EEOC charge remained pending. In sum, viewing the evidence in a light most favorable to Siwik, there is enough evidence to satisfy the low *prima facie* burden of retaliation. *See Taylor*, 703 F.3d at 339.

---

[19] The Cleveland Clinic also presents a detailed argument regarding hearsay evidence. (Doc. No. 56 at 14.) Specifically, the Cleveland Clinic maintains Siwik cannot show a causal connection existed because the only evidence Siwik has to show that Akron Children's set aside Siwik's candidacy due to Saarel's comments, is a conversation which allegedly occurred between Lane and Siwik. (*Id.* at 14-15.) The Court need not determine whether or not this evidence constitutes inadmissible hearsay because, as discussed *supra*, Siwik does not need to show Akron Children's did not hire him due to Saarel's comments in order to meet his *prima facie* burden.

However, the Cleveland Clinic has provided a legitimate, nondiscriminatory reason for Saarel's reason for discussing the lawsuit. Saarel explained this "neutral mention of the CCF lawsuit" was simply "a fact of mutual interest during a social conversation that was unrelated to" Siwik's candidacy at Akron Children's Hospital. (Doc. No. 56 at 13; Doc. No. 50-5, Saarel Depo at Tr. 270.)

The Court finds Siwik has presented sufficient evidence tending to show the Cleveland Clinic's proffered reasons for Saarel mentioning the lawsuit was a pretext[20] for retaliation. Shortly after receiving Siwik's complaint, Saarel called Lane to inform him of the lawsuit. (Doc. No. 50-5, Saarel Depo at Tr. 270, Doc. No. 50-3, Lane Depo at Tr. 50.) At that time, the Cleveland Clinic and Akron Children "had been in a collaboration for [their] heart center for several years" and were "working together for pediatric heart care." (Doc. No. 50-5, Saarel Depo at Tr. 240-242.) Moreover, Akron Children's would often bring physicians it was considering hiring to the Cleveland Clinic's clinical surgical conference. (*Id*. at Tr. 248.) Furthermore, following this phone call, Lane notified the leadership at Akron Children's of the lawsuit because they were considering Siwik for a position. (Doc. No. 50-3, Lane Depo at Tr. 53.) While this evidence does not prove Saarel informed Lane about the lawsuit with the intent to retaliate against him and hurt his employment prospects at Akron Children's, a jury could reasonably reject Saarel's explanation that her comment was simply an innocent conversation between colleagues, and instead infer Saarel was attempting to influence Akron Children's to not hire Siwik. *See Braithwaite*, 258 F.3d at 493–94 (a plaintiff must produce "sufficient evidence

---

[20] Siwik has offered other arguments of pretext, including Dr. Saarel's "changing explanations," the lack of evidence any time constraints existed, and Siwik's apparent anger. (Doc. No. 55 at 21.) However, the Court does not find these persuasive, as discussed *supra*.

from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant[ ] . . . did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action.")(internal citations omitted).

In sum, when viewing the evidence in a light most favorable to Siwik, a jury could conclude the Cleveland Clinic, through Saarel's comments to Lane, retaliated against him for his 2015 EEOC charge and associated lawsuit. Thus, whether the Cleveland Clinic retaliated against Siwik is a fact question for a jury to decide and summary judgment is not appropriate.

Accordingly, Siwik has shown a material fact dispute with respect to his retaliation claims against the Cleveland Clinic. Therefore, the Cleveland Clinic's request for summary judgment on Counts Three and Six is DENIED.[21]

### 4. Aiding and Abetting (Count Eight) – The Cleveland Clinic & Dr. Saarel

Lastly, both the Cleveland Clinic and Saarel[22] ask for summary judgment with respect to Siwik's aiding and abetting claim. (Doc. No. 52 at 33-34.) Ohio law makes it unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with this chapter or any order issued under it, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice." O.R.C. § 4112.02(J).

Because the Court has concluded there is a genuine issue of material fact with respect to

---

[21] As noted *supra*, retaliation claims brought under Ohio law are subject to the same burden-shifting framework as federal retaliation claims. *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 288 (6th Cir. 2012). Thus, as Siwik's federal retaliation claim (Count Three) survives summary judgment, so must his state law retaliation claim (Count Six).

[22] Count Eight is the only claim which Siwik has raised against Dr. Saarel. (*See* Doc. No. 28.)

Siwik's underlying retaliation claims against the Cleveland Clinic, it is not appropriate for the Court to grant summary judgment this claim as to Saarel.[23]  Indeed, Siwik has brought forth sufficient evidence to support the proposition Saarel was involved with the alleged retaliation against him by the Cleveland Clinic.  *See Oster v. Huntington Bancshares, Inc.*, 2017 WL 2215462, *22 (S.D. Ohio May 19, 2017).  Accordingly, Defendant Saarel's request for summary judgment on Count Eight is DENIED.

## B.  Akron Children's Hospital and Dr. John Lane (Counts Three, Seven, Eight)

Siwik and the Akron Children's Defendants have filed cross-motions for summary judgment regarding the merits of Siwik's claims.  (Doc. Nos. 51, 50.)

## 1.  Retaliation (Counts Three and Seven) – Akron Children's Hospital

In Counts Three and Seven of the Second Amended Complaint, Siwik alleges federal and state retaliation claims against Akron Children's.  (Doc. No. 28 at ¶¶104-112, 129-133.) Defendant Akron Children's Hospital argues it is entitled to summary judgment its favor with respect to these claims as Siwik is unable to meet his *prima facie* burden under the *McDonnell Douglas* framework.  (Doc. No. 50-1 at 18.)  Conversely, Siwik argues summary judgment should be granted in his favor because the evidence proves Akron Children's retaliated against him for participating in a protected activity.  (Doc. No. 51-1 at 15-21.)

---

[23]  While the claim as to Saarel survives, the Cleveland Clinic cannot, as a matter of law, aid or abet itself in retaliating against Siwik.  *Sampson v. Sisters of Mercy of Williard, Ohio*, 2015 WL 3953053, *10 (N.D. Ohio June 29, 2015); *Oster*, 2017 WL 2215462 at *22 ("a corporate entity cannot aid and abet itself in employment discrimination").  Thus, Count Eight as to the Cleveland Clinic is dismissed.

Absent direct[24] evidence of retaliation, a plaintiff must establish a *prima facie* case using the *McDonnell Douglas* framework, as detailed above. *Grant*, 2018 WL 6787539 at *1. Once a plaintiff has established a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate, non discriminatory reason for the adverse employment action. *Nguyen*, 229 F.3d at 562. The plaintiff must then show the defendant's proffered reason pretextual, and "the real reason for the employer's action was intentional retaliation." *Imwalle*, 515 F.3d at 544.

The first three prongs of the *prima facie* case with respect to this position are not in dispute. Siwik engaged in a protected activity[25] when filing his EEOC charge and related discrimination lawsuit against the Cleveland Clinic. Akron Children's Hospital and Lane were aware of the lawsuit. (Doc. No. 50-3, Lane Depo at Tr. 50.) Siwik subsequently suffered and adverse employment action when Akron Children's declined to offer him a position. (*Id.* at Tr. 43.)

The Court finds an issue of material fact exists as to the fourth element of the *prima facie* case – whether there was a causal connection between Siwik's protected activity and Akron

---

[24]   In his Memorandum in Opposition, Siwik claims to have direct evidence of retaliation, thus foregoing the need for the Court to "engage in the burden shifting framework." (Doc. No. 53 at 11.) Siwik asserts Dr. Lane's "repeated admissions that he decided not to hire Dr. Siwik because of Dr. Siwik's participation in a lawsuit against the Clinic and Dr. Saarel, is direct evidence of retaliation." (*Id.*) However, Siwik does not direct the Court to where these admissions occurred or where they can be located within the evidence. The only evidence the Court has located which would be could be construed as direct evidence of retaliation is Siwik's own testimony Lane told him Akron Children's was no longer considering him due to information he received from the Cleveland Clinic. (Doc. No. 50-2, Siwik Depo at Tr. 63-66.) However, Lane has disputed this testimony. (Doc. No. 50-3, Lane Depo at Tr. 58-59.) As this is a dispute of material fact, the Court cannot grant summary judgment on this basis.

[25]   *See EEOC Enforcement Guidance on Retaliation and Related Issues*, 2016 WL 4688886, *15-16 (E.E.O.C. Guidance Aug. 25, 2016)(anti-retaliation provisions include protections to "those whose protected activity involved a different employer.").

Children's decision not to hire him.  In late 2016, Lane approached Siwik about a possible opening at Akron Children's.  (Doc. No. 50-2, Siwik Depo at Tr. 56-57.)  Shortly thereafter, Akron Children's began to take steps towards hiring Siwik.  The hospital conducted a financial analysis which specifically compared the costs and benefits of a departing part-time physician with Siwik.  (Doc. No. 50-3, Lane Depo, Exh. 7.)  Lane and several other physicians from Akron Children's hosted Siwik at a recruitment dinner in May 2017.  (Doc. No. 50-3, Lane Depo, Exh. 1, 9.)  Following this dinner, Lane sent Siwik a letter, informing him of the next step in the recruitment process.  (Doc. No. 50-2, Siwik Depo, Exh. F).

Meanwhile, on May 22, 2017, Siwik filed his lawsuit against the Cleveland Clinic.  (Doc. No. 1.)  In late May or early June 2017, Saarel mentioned Siwik's discrimination claim to Lane.  (Doc. No. 50-3, Lane Depo at Tr. 50.)  Following this conversation, Lane informed the executive vice president and the chief medical officer of Akron Children's of the lawsuit.  (*Id*. at Tr. 53.)  Lane explained he notified these individuals because Akron Children's was "in the process of considering Dr. Siwik for a position" and he was not certain if this information was "relevant or not."  (*Id*. at Tr. 54.)

What transpired after Akron Children's became aware of the lawsuit is in dispute.  According to Siwik, around June 25, 2017, Lane told him his candidacy for the position had been "set aside."  (Doc. No. 50-2, Siwik Depo at Tr. 54, 65.)  Thereafter, Siwik and Lane had a one-on-one meeting at a restaurant on July 3, 2017.  (*Id.* at Tr. 63.)  According to Siwik, Lane informed him he was "no longer considered a candidate for the position at Akron Children's" at this meeting.  (*Id*. at Tr. 65.)  Siwik testified Lane explained this was due to the "communication he had with Dr. Saarel and the Cleveland Clinic."  (*Id*. at Tr. 66.)  Lane disputes this testimony,

asserting at that point in time, "a lawsuit really was not an issue for [him]." (Doc. No. 50-3, Lane

Depo at Tr. 58.) However, Siwik has presented evidence which, if believed by a factfinder,

raises an inference that but for Siwik's pending lawsuit against the Cleveland Clinic, Akron

Children's would have continued to consider him for the position. Moreover, the short time

frame between when Akron Children's became aware of the lawsuit (June 2017) and decision to

not hire him (July 2017) also raises an inference of a causal connection. *See Mickey v. Zeidler*

*Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)("Where an adverse employment action occurs

very close in time after an employer learns of a protected activity, such temporal proximity

between the events is significant enough to constitute evidence of a causal connection for the

purposes of satisfying a *prima facie* case of retaliation."). *See also Yazdian v. ConMed*

*Endoscopic Tech.*, 793 F.3d 634, 650 (6th Cir. 2015).

Assuming, *arguendo*, a *prima facie* case has been established, Akron Children's has

offered a legitimate, non discriminatory reason for declining to hire Siwik. Akron Children's

asserts it "decided not to continue with [Siwik's] candidacy based upon" a July 20, 2017 email[26]

---

[26]     This email read as follows:

Dear John:

I'm sorry to bother, but I felt obligated to reach out one last time before my initial
hearing in the Domestic Relations Court on July 25th. As you know, it involves
Camden being able to relocate to Rhode Island and the best, and possibly only, way
I can forestall that is to be able to demonstrate I will be employed in the Cleveland
area shortly. I understand that isn't necessarily Akron's problem, but I believe that
CCF's actions with regards to my candidacy with them, and now with you, were
wrong and likely unlawful. And again, all I asked for what a fair opportunity to do
what I have done competently, and with alacrity, for 20 years now.

Anyways, if you can figure out a way to help me, I'd be grateful. It'll be
heartbreaking for me to have Camden move as a consequence of their actions.

Siwik had sent to Lane. (Doc. No. 50-1 at 19.) Attached to this email was an amended complaint Siwik had drafted. (Doc. No. 50-2, Siwik Depo, Exh. E.) This complaint included allegations Lane had told Siwik his "candidacy had been set aside for the time being because he and Akron Children's Hospital had been notified by the Cleveland Clinic Foundation" of the lawsuit. It further alleged Lane told Siwik "Akron Children's now needed to be 'more deliberate' giving CCF's 'alerts,' and that he could not foresee when those circumstances may change." (*Id.*) Lane testified this complaint "quoted [him] extensively out of context," which he viewed as a "betrayal." (Doc. No. 50-3, Lane Depo at Tr. 102.)

Akron Children's maintains this email provided legitimate, nondiscriminatory reasons for declining to hire Siwik because (1) Siwik had "breached Dr. Lane's confidence and trust by threatening to inject Dr. Lane into his lawsuit against the Cleveland Clinic;" and (2) the email "demonstrated that he was interested in the position solely as a mechanism to obtain leverage or prevail in his custody dispute over his minor son, rather than out of any sincere interest for the Cardiology Position." (Doc. No. 50-1 at 19.) Akron Children's contends since it has provided legitimate, non- retaliatory reasons, the burden shifts to Siwik to show pretext. (*Id.* at 19-20.)

---

Thanks for your consideration and honesty. Just for your records, I attached a recommendation letter that was ironically sent to Tess last year on my behalf when I asked to be considered for a general cardiology position at Hillcrest. Also, given CCF's recent actions, my complaint in Federal court is being amended. Since I provided you a copy of the initial complaint, I'm going to forward you what is being added.

Thanks again for your time.

Ernie.

(Doc. No. 50-2, Siwik Depo, Exh. E).

However, Siwik views Akron Children's admission it declined to hire him on the basis of this email differently.  Siwik argues the email itself was the protected activity.  (Doc. No. 51-1 at 15.)  Siwik contends because Akron Children's conceded it did not hire him because of this email, "they have admitted that their actions were taken for retaliatory reasons."  (*Id*. at 21.)

 For purposes of a *prima facie* case of retaliation, there are two types of protected activity: (1) participation in a proceeding with the Equal Employment Opportunity Commission ("EEOC") and (2) opposition to an apparent Title VII violation.  *Wasek v. Arrow Energy Serv., Inc*., 682 F.3d 463, 469 (6th Cir. 2012).  Siwik argues his July 20, 2017 email constitutes opposition to a Title VII violation.  (Doc. No. 58 at 3.)

The EEOC has identified a range of oppositional conduct which is protected by Title VII, including complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices.  *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000)(citing the EEOC Compliance Manual).  There is no restriction "on who the individual doing the complaining may be or on the party to whom the complaint is made known—i.e., the complaint may be made by anyone and it may be made to a co-worker, newspaper reporter, or anyone else about alleged discrimination against oneself or others."  *Id.* at 580.  However, the individual making the complaint must have a reasonable and good faith belief he is opposing unlawful practices.  *Yazdian*, 793 F.3d at 646.

Here, Siwik is asserting the entirety of his email to Lane is protected activity because it references his retaliation lawsuit against the Cleveland Clinic.  The Court does not find this argument persuasive.  While Siwik's lawsuit and his amended complaint against the Cleveland Clinic are protected activity, the entire email is not.  Indeed, the email not only references the

Cleveland Clinic's alleged retaliation, but also Siwik's desire for a hiring decision due to his domestic dispute, a request which is not protected by Title VII. Siwik himself has admitted this email was sent in "a last-ditch attempt to try to avoid" his ex-wife moving his son to Rhode Island. (Doc. No. 50-2, Siwik Depo at Tr. 47.) As Siwik did not have a "reasonable and good faith belief" his entire email was opposing unlawful practices, the entire email cannot be considered a "protected activity." *See Yazdian*, 793 F.3d at 646. Thus, Lane's admission he declined to hire Siwik based upon the email does not conclusively establish retaliation.

Siwik further argues Lane's admission he did not hire Siwik due to the content of the amended complaint is evidence of retaliation. (Doc. No. 58 at 4.) While Siwik's lawsuit and charges of retaliation are protected activity, this argument is a mischaracterization of Lane's testimony. Lane agreed that had Siwik not "brought him into his lawsuit with the Cleveland Clinic," he probably would have hired him. (Doc. No. 50-3, Lane Depo at Tr. 117-118.) However, this is not evidence Lane's decision not to hire Siwik was made directly in response to Siwik's Title VII protected activity. Indeed, Lane was already aware of the lawsuit against the Cleveland Clinic prior to receiving this email. Rather, as Lane explained, the content of the amended complaint referenced private conversations between him and Siwik, which Lane believed Siwik took out of context and mischaracterized. (*Id.* at Tr. 139, 140.) It is reasonable and nondiscriminatory to decline to hire an individual on the basis that he misquoted and mischaracterized a private conversation.

Akron Children's has articulated another reason for not hiring Siwik – the email demonstrated he was interested in the position only to "obtain leverage or prevail in an ongoing custody dispute." (Doc. No. 54 at 9.) Siwik's July 20, 2017 email does reference his ongoing

domestic relations case.  (Doc. No. 50-2, Siwik Depo, Exh. E).  Within the email, Siwik informs Lane the only way for him to forestall his minor son relocating is to "demonstrate [he would] be employed in the Cleveland area shortly."  (*Id*.)  He requests Lane "figure out a way to help" him, again referencing the possibility of his son moving from Ohio.  (*Id*.)  Lane testified he did not "fault" Siwik for wanting to be near his children, but his opinion of Siwik changed because he "became more insistent and more rushed" and "wanted a decision about employment because it affected his – it affected his position in his other lawsuits and he wanted to move at a pace [Akron Children's was] not willing to move at."  (Doc. No. 50-3, Lane Depo at Tr. 41.)  While Siwik argues this cannot be a legitimate reason because Lane had known about the "custody dispute for months," Akron Children's burden is one of production, not persuasion, and Akron Children's has provided a reasonable basis to satisfy this burden.  (*See* Doc. No. 58 at 5.) *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 589 (6th Cir. 2009).  *See also Casagrande v. OhioHealth Corp.*, 666 Fed App'x 491, 500 (6th Cir. Dec. 20, 2016).

Therefore, to prevail on his motion for summary judgment, Siwik must rebut the provided reasons and show Akron Children's explanations are pretext.  Siwik insists Lane's reasoning Siwik had breached his trust by quoting him in the amended complaint "is not a legitimate justification" and is "actually an admission that Defendant's unlawfully retaliated against Siwik." (Doc. No. 58 at 7.)  In support of this argument, Siwik cites a First Circuit case which stands for the proposition a protected activity cannot be "punished as an act of disloyalty or a breach of trust."  (Doc. No. 58 at 7, Doc. No. 53 at 14, *See DeCaire v. Mukasey*, 530 F.3d 1 (1st Cir. 2008).)  Akron Children's maintains there is no evidence it was attempting to punish Siwik for engaging in protected activity.  (Doc. No. 57 at 8.)  Rather, Akron Children's argues Lane "did

not appreciate being potentially dragged into [Siwik's] personal matter – a perfectly legitimate and non-retaliatory reason for not continuing with a person's candidacy." (*Id*.)

Viewing the evidence in a light most favorable to Akron Children's, the Court concludes a reasonable juror could find Lane's feelings Siwik had breached his confidence and trust were not pretext for retaliation. As discussed *supra*, Siwik quoted Lane throughout his amended complaint, quotes which Lane felt were either inaccurate or out of context. He was not "punishing" Siwik for filing a claim of retaliation against the Cleveland Clinic, rather he was declining to hire him due to what he viewed as an inappropriate and inaccurate email. Inappropriate communication styles can constitute a legitimate, non-discriminatory grounds for adverse action. *See Parikh v. Cleveland Hardware & Forging Co.*, 2006 WL 1515667, at *9 (N.D. Ohio May 26, 2006). A reasonable jury could believe Lane's assertion his decision not to hire Siwik was unrelated to Siwik's lawsuit against the Cleveland Clinic and find Lane was justified in feeling betrayed by Siwik.

Conversely, viewed in a light most favorable to Siwik,[27] the Court also finds Siwik has offered evidence from which a reasonable jury could conclude Akron Children's reasoning was pretextual. Lane testified prior to this July 20, 2017 email, Siwik was still under consideration for a position at Akron Children's. (Doc. No. 50-3, Lane Depo at Tr. 103.) However, Siwik has offered evidence to the contrary. After Saarel had informed Lane about Siwik's lawsuit, Lane

---

[27]     Siwik and Akron Children's have filed cross motions for summary judgment. The typical summary judgment standard of review "poses unique issues" when cross motions for summary judgment are filed. *B.F. Goodrich Co. v. U.S. Filter Corp*., 245 F.3d 587, 592 (6th Cir.2001). In such case, the district court must evaluate each party's motion on its own merits, drawing all reasonable inferences against the moving party. *Id*. If it is possible to draw inferences in either direction, then both motions for summary judgment should be denied. *Id.* at 592–93.

relayed this information to the executive vice president and the chief medical officer of Akron Children's. (Doc. No. 50-3, Lane Depo at Tr. 50-53.) Lane admits he notified these individuals because Akron Children's was "in the process of considering Dr. Siwik for a position" and he did not know if this information was "relevant or not." (*Id*. at Tr. 54.) Moreover, according to Siwik, Lane told him in both June and early July 2017 he was no longer being considered for the position. (Doc. No. 50-2, Siwik Depo at Tr. 54, 63-65.) While Lane disputes this, Siwik has presented evidence upon which a reasonable juror could conclude Akron Children's was no longer considering him due to his lawsuit and Lane used the content of the June 20, 2017 email as a pretextual reason for not hiring him. *See Braithwaite*, 258 F.3d at 494 (finding in order for plaintiff to show a dispute of material facts, a plaintiff must "put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action.").

Siwik also argues since Akron Children's had known about Siwik's ongoing custody dispute when they began to recruit him, its explanation that it stopped considering him due to it has no basis in fact. (Doc. No. 58 at 8, Doc. No. 53 at 14.) He maintains it was not until Akron Children's became aware of his protected activity that he was no longer under consideration for the position. (Doc. No. 53 at 14.) Akron Children's asserts while Lane was "generally aware of [Siwik's] ongoing custody dispute," Siwik had become more insistent and rushed by July 2017, wanting a hiring decision in a shorter time frame. (Doc. No. 57 at 9.)

The Court finds a reasonable juror could draw inferences in either direction for this explanation as well. Viewing the evidence in a light most favorable to Akron Children's, Siwik became more insistent regarding an employment decision between May 2017 and July 2017. In

May 2017, Lane had written a letter for Siwik in connection with his custody dispute. (Doc. No. 50-2, Siwik Depo, Exh. F). Siwik requested this letter to demonstrate he was being considered for a position in Northeast Ohio. (*Id.* at Tr. 61.) He did not request any sort of hiring decision from Lane at that time. However, by his July 20, 2017 email, Siwik arguably placed pressure on Lane for a hiring decision. Within the email, Siwik informed Lane his custody hearing was in five days and the only way he could forestall his son moving would be by securing employment in the Cleveland area. (*Id.* at Exh. E.) He implored Lane "figure out a way to help" him, adding it would be "heartbreaking" for his son to move. (*Id.*) Siwik admits this email was "a last-ditch attempt to try to avoid" his ex-wife moving his son from Ohio. (*Id.* at Tr. 47.) Lane testified at this point, Siwik had become "insistent and more rushed" regarding an hiring decision and Akron Children's was not willing to move that quickly. (Doc. No. 50-3, Lane Depo at Tr. 41.) A reasonable juror could conclude Siwik was hoping to secure employment at Akron Children's only in order to prevent his son from moving and Akron Children's decision not to hire him on this basis was not pretext for retaliation.

However, viewing the evidence in a light most favorable to Siwik, a reasonable jury could also conclude this reason was pretextual. Lane testified he did not "fault" Siwik for his desire to work near his family and he felt Siwik's interest in seeking employment at Akron Children's was sincere. (Doc. No. 50-3, Lane Depo at Tr. 41, 121.) As Siwik correctly notes, Lane and Akron Children's were aware of Siwik's custody issues and desire to work in Northeast Ohio and this did not deter them from considering him for a position in May 2017. In fact, Lane went so far as to assist Siwik in his custody dispute and provided a letter to demonstrate Siwik was being considered for a position in Northeast Ohio. (Doc. No. 50-2, Siwik Depo, Exh. F). Nevertheless,

shortly after Akron Children's became aware of the lawsuit, and immediately after it became aware of the retaliation claims against the Cleveland Clinic, Siwik was not longer a viable candidate. Moreover, during his deposition, Lane reviewed Siwik's email line by line and conceded there was nothing in the body of the email which fueled his decision not to hire Siwik. (Doc. No. 50-3, Lane Depo at Tr. 104-108.) This included Siwik's references to his upcoming domestic relations hearing and desire to have employment in the area. (*Id*.) Based upon this evidence, the Court finds a reasonable jury could find Akron Children's rationale to be pretextual.

Accordingly, because there is a factual dispute regarding not only the fourth prong of the *prima facie* case, but also whether or not Akron Children's provided reasons for the adverse action were pretextual, summary judgment for either party is not appropriate. The Court DENIES Defendant Akron Children's Hospital's Motion for Summary Judgment and DENIES Plaintiff's Motion for Partial Summary Judgment as to Counts Three and Seven.

**2.     Aiding and Abetting (Count Eight) – Akron Children's Hospital & Dr. Lane**

In Count Eight of the Second Amended Complaint, Siwik alleges Ohio aiding and abetting claims against Akron Children's Hospital and Lane, pursuant to O.R.C. §4112.02(J). (Doc. No. 28 at ¶¶134-138.) Defendants Akron Children's Hospital and Lane argue they are entitled to summary judgment in their favor with respect to this claim. (Doc. No. 50-1 at 20-22.) Conversely, Siwik argues summary judgment should be granted in his favor against Lane[28]

---

[28]     In his Reply Brief, Siwik only argues that Lane can be held liable under O.R.C. §4112.02(J). (Doc. No. 58 at 9.) Indeed, Akron Children's cannot, as a matter of law, aid or abet itself in retaliating against Siwik. *Sampson*, 2015 WL 3953053, *10; *Oster*, 2017 WL 2215462 at *22 ("a corporate entity cannot aid and abet itself in employment discrimination"); *Woodworth v. Time Warner Cable, Inc.*, 2015 WL 6742085, Fn 3 (N.D. Ohio Nov. 2, 2015). Thus, Count Eight as to Akron Children's is dismissed.

because he has established Akron Children's retaliated against him from participating in a protected activity. (Doc. No. 51-1 at 21.)

As noted *supra*, Ohio law makes it unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, to obstruct or prevent any person from complying with this chapter or any order issued under it, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful discriminatory practice." O.R.C. § 4112.02(J).

Lane argues he cannot be held liable under this provision for several reasons.[29] First, Lane argues because Siwik cannot establish any violation of state or federal civil rights law, he cannot be held liable for aiding and abetting a non-existent violation. (Doc. No. 50-1 at 21.) Lane further maintains it would be "legally impossible" for Lane to aid and abet Akron Children's as he is "nothing more than an agent of Akron Children's Hospital." (*Id.* at 22.)

The Court does not find either of these arguments persuasive. Because the Court has concluded there is a genuine issue of material fact with respect to Siwik's underlying retaliation claims against Akron Children's, it is therefore conceivable for a jury to find Lane liable for aiding and abetting such retaliation. *See Oster*, 2017 WL 2215462 at *22 (finding where a plaintiff can survive summary judgment on discrimination and retaliation claims, allegations and evidence of aiding and abetting "pass muster" as well).

Moreover, O.R.C. § 4112.02(J) does provide for employees, such as Lane, to be held

_____

[29] Lane also asserts there is no evidence Lane or Akron Children's aided or abetted the Cleveland Clinic or Saarel in discriminating or retaliating against Siwik. (Doc. No. 50-1 at 21.) However, Siwik has not alleged Lane or Akron Children's aided or abetted the Cleveland Clinic or Saarel. Indeed, Siwik has alleged Lane "aided and abetted [Akron Children's] in its unlawful employment practices." (Doc. No. 53 at 17.) To the extent Siwik does contend Lane aided and abetted the Cleveland Clinic and Saarel, the Court deems these arguments waived.

liable for aiding and abetting its employer's discriminatory or retaliatory practices. *Hauser v. Dayton Police Dep't*, 140 Ohio St.3d 268, ¶12 (2014)( finding O.R.C. § 4112.02(J) "holds individual employees liable for their participation in discriminatory practices."). *See also Woodworth v. Time Warner Cable, Inc.*, 2015 WL 6742085, *3 (N.D. Ohio Nov. 2, 2015).

Lane argues he is "nothing more than an agent of Akron Children's" and Akron Children's cannot aid and abet itself. (Doc. No. 50-1 at 22.) In support, Lane cites *Sampson v. Sisters of Mercy of Willard, Ohio*, 2015 WL 3953053 (N.D. Ohio June 29,2015). (*Id*.) While *Sampson* does hold a corporate entity cannot aid and abet itself in violations of the Ohio Civil Rights Act, Siwik is not asserting Akron Children's aided and abetted itself in retaliating against him. Siwik is alleging Lane "aided and abetted [Akron Children's] in its unlawful employment practices." (Doc. No. 53 at 17.)

Lane maintains *Sampson* "stands for the proposition that were all alleged 'aiders or abettors' are members of the same collective enterprise (e.g., a hospital), generally speaking, there are not two separate 'persons' capable of 'aiding and abetting' one another in discriminatory acts." (Doc. No. 16 at 10.) Lane's reliance on *Sampson* is misplaced. The court in *Sampson* found a plaintiff's aiding and abetting claim failed as a matter of law because the only evidence the plaintiff brought forth to support the aiding and abetting claim was against individuals who were not named as defendants in the action. *Sampson*, 2015 WL 3953053 at *10. The plaintiff did not provide any evidence two of the named defendants – both corporate entities – aided and abetted the employer's discriminatory actions. *Id.* The only remaining defendant was the plaintiff's employer, who the court concluded could not aid or abet its own

allegedly discriminatory actions.  *Id.*  The court[30] did not, despite Lane's suggestion otherwise, find an employee or "agent" of an employer is unable to be found liable under O.R.C. § 4112.02(J).

Conversely, Siwik argues that, because he has established Akron Children's is liable for retaliation, Lane must be liable for aiding and abetting the retaliation.  (Doc. No. 58 at 9.)  This argument also fails.  While Siwik has brought forth sufficient evidence to support the proposition Lane was involved with the alleged retaliation by Akron Children's, he has not conclusively established such retaliation occurred.  Therefore, it is not appropriate for the Court to grant summary judgment to Siwik on this claim.

.  In sum, because the Court has concluded there is a genuine issue of material fact with respect to Siwik's underlying retaliation claims against Akron Children's, the Court declines to grant summary judgment on this claim for either party.  Accordingly, the Court DENIES Defendant Lane's Motion for Summary Judgment and DENIES Plaintiff's Motion for Partial Summary Judgment as to Count Eight.

### 3.      Punitive Damages – Akron Children's Hospital & Dr. Lane

In his Second Amended Complaint, Siwik seeks punitive damages from the Defendants. (Doc. No. 28 at 11-17.)  The Akron Children's Defendants argue Siwik cannot recover punitive damages under federal or Ohio law because he has not adduced any evidence of malice or reckless indifference.  (Doc. No. 50-1 at 23-25.)  Siwik asserts the Akron Children's Defendants

---

[30] Moreover, this Court has located multiple cases from both the Northern and Southern Districts of Ohio which found an employee can be held liable for aiding and abetting its employer's discriminatory or retaliatory practices.  *See Oster*, 2017 WL 2215462 at *22 (employees of a bank can be held liable for aiding and abetting the banks allegedly discriminatory practices); *Cummings v. Greater Cleveland Regional Transit Authority*, 88 F.Supp.3d 812 , 820 (N.D. Ohio Jan. 29, 2015); *Woodworth*, 2015 WL 6742085 at *2.

are not entitled to summary judgment on the issue of punitive damages.  (Doc. No. 53 at 18.)

Both federal and Ohio law allow for punitive damages in employment discrimination and retaliation actions.  42 U.S.C. § 1981a(a)(1); *Rice v. CertainTeed Corp.*, 84 Ohio St.3d 417, 418 (1999) (concluding Ohio law "authorizes an award of punitive damages in civil employment discrimination actions.")  To recover punitive damages under federal law, a plaintiff must show the employer "engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  *Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 469 (6th Cir.1999)(citing 42 U.S.C. § 1981a(b)(1)).  "Malice" and "reckless indifference" refer to "the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination."  *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535 (1999).  Therefore, in order for a plaintiff to recover punitive damages, he must show "an employer . . . discriminated in the face of a perceived risk that its actions will violate federal law[.]"  *Id*. at 536.

Similarly, to support a claim for punitive damages under Ohio law, a plaintiff must show actual malice.  *Morgan v. New York Life Ins. Co.*, 559 F.3d 425, 440 (6th Cir. 2009)(citing *Rice*, 84 Ohio St.3d 417.).  "[A]ctual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm."  *Preston v. Murty*, 32 Ohio St.3d 334, 336, 512 N.E.2d 1174, 1176 (1987).  Moreover, under Ohio law, a plaintiff "must show by clear and convincing evidence that he is entitled to punitive damages."  *Morgan*, 559 F.3d at 440 (citing *Cabe v. Lunich*, 70 Ohio St.3d 598, 601 (1994).).

With respect to the federal standard for punitive damages, the Court finds Siwik has presented enough evidence to create a genuine issue of material fact as to whether the Akron Children's Defendants acted with malice or reckless indifference to his federally protected rights. *See Workman*, 165 F.3d at 469. Siwik testified he believed the Akron Children's Defendants "took their actions they did knowing they would cause [him] distress at a minimum and maybe damage as well." (Doc. No 50-2, Siwik Depo at Tr. 83.) In addition, Siwik presented the following evidence: (1) Lane's admission he immediately informed the executive vice president and chief medical officer of the lawsuit; (2) Lane's testimony these individuals told Lane to "break off any further communication" with Siwik when Siwik provided him with an amended complaint in which Siwik asserted his federally projected rights; and (3) Siwik's allegations Lane had told him on multiple occasions he was not being considered for the position due to his lawsuit. (*See* Doc. No. 50-3, Lane Depo at Tr. 54, 148; Doc. No. 50-2, Siwik Depo at Tr. 54, 63, 65, 66.) Considering all of the evidence in conjunction with Siwik's testimony, a reasonable jury could infer the Akron Children's Defendants acted with a reckless indifference to Siwik's federally protected rights.

The Akron Children's Defendants point[31] to Lane's testimony that he "never had retaliation on [his] mind" as evidence Siwik cannot show the Akron Children's Defendants were

---

[31] The Akron Children's Defendants also make much of the fact Siwik, in his Motion for Partial Summary Judgment, states "Dr. Lane bears no ill will toward Dr. Siwik, nor does anyone else at ACH." (Doc. No. 51-1 at 13.) However, whether or not Lane or Akron Children's bears "ill will" towards Siwik is irrelevant to establishing punitive damages under federal law. The Akron Children's Defendants could conceivably have no "ill will" towards Siwik personally, but still decide to act with a reckless indifference to his federally protected rights. Indeed, Siwik has presented evidence to show shortly after Siwik asserted his federally protected rights, the Akron Children's Defendants chose to break off any communication with him and cease to consider him for a position. (*See* Doc. No. 50-3, Lane Depo at Tr. 148.)

acting with "any subjective knowledge that they were violating federal law." (Doc. No. 57 at 14.) However, a reasonable juror, considering all the evidence in context, could find Lane's testimony not credible. This Court has already found there is a question of fact as to the motivation behind the Akron Children's Defendants decision not to hire Siwik. Because the resolution of this factual dispute will largely turn on the jury's credibility evaluation of both Siwik and Lane, the Court declines to determine whether or not the Akron Children's Defendants acted with "malice" or "reckless indifference" at this stage in the proceedings. *See Saley v. Caney Fork, LLC*, 886 F.Supp.2d 837, 861 (M.D. Tenn. Aug. 10, 2012)("a more detailed inquiry into Defendant's state of mind and knowledge of the [ADA] can occur at trial.").

Similarly, the Court finds Siwik has presented enough evidence to create a genuine issue of material fact as to whether the Akron Children's Defendants acted with actual malice[32] to support an award of punitive damages under Ohio law. As noted *supra*, actual malice can be established in two ways under Ohio law. A plaintiff must show either "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a

---

[32] The Court notes Siwik asserts "[r]etaliatory conduct, by itself, is sufficient" to find a defendant acted in conscious disregard of a plaintiff's rights. (Doc. No. 53 at 20.) This is a mischaracterization of the law. As noted *supra*, the Supreme Court of Ohio has held in order to recover punitive damages, a plaintiff must show *conscious* disregard for his rights. *Preston*, 32 Ohio St.3d at 334. A plaintiff is not automatically entitled to punitive damages upon establishing a violation of the Ohio Civil Rights Act. *See McIntyre v. Advance Auto Parts*, 2007 WL 120645, *29-30 (N.D. Ohio Jan. 10, 2007)(finding a plaintiff must show "ill will or spirit of revenge, or with a conscious disregard for Plaintiff's rights and safety" in order for a request for punitive damages to survive on summary judgment, despite the fact an Ohio Civil Rights Act claim was able to survive summary judgment.) *See also Kolstad*, 527 U.S. at 534 ("There will be circumstances where intentional discrimination does not give rise to punitive damages liability.") Regardless, the Court finds Siwik has presented enough evidence for a reasonable juror to infer actual malice at the behest of the Akron Children's Defendants.

conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston*, 512 N.E.2d at 1176.  Here, Siwik seeks to establish actual malice under the second prong, asserting the Akron Children's Defendants acted "with conscious disregard" of his rights.  (Doc. No. 28 at 13, 16.)  As noted above, Siwik has presented several pieces of evidence from which a reasonable juror could infer the Akron Children's Defendants were not only aware Siwik was asserting his rights under the Ohio Civil Rights Act, but had brazenly chosen not to hire him due to the assertion of those rights.  *See Jakimczuk v. DaimlerChrysler Corp.*, 2006 WL 1624549, *4 (N.D. Ohio Jan. 9, 2006)("Though [plaintiff] has not presented direct evidence, a jury may infer actual malice from conduct and surrounding circumstances.").  Again, because the determination of the Akron Children's Defendants' motivations behind their employment decision with regards to Siwik is a task best left for the jury, the Court declines to dispose of Siwik's request for punitive damages under Ohio law on summary judgment.

Finally, the Akron Children's Defendants argue they are entitled to summary judgment on the issue of punitive damages because Siwik was unable to testify as to whether or not the Akron Children's Defendants acted with malice.  Indeed, during his deposition, Siwik testified he did not know if Akron Children's wanted to intentionally hurt him or cause him distress.  (Doc. No 50-2, Siwik Depo at Tr. 82, 83.)  Siwik testified while he knew the actions of Akron Children's and Lane caused him distress, he did not "have a belief one way or the other what they were intending to do."  (*Id.* at Tr. 83, 84.)  However, while this testimony establishes Siwik himself does not understand the legal standard for punitive damages, this does not preclude Siwik from possibly recovering them.

In sum, construing the facts in a light most favorable to Siwik, a reasonable jury could find the Akron Children's Defendants acted with the requisite malice for punitive damages under either federal or Ohio law.  Accordingly, for the foregoing reasons, Defendants' motion for summary judgment is DENIED as to Plaintiff's claim for punitive damages.

## V. Conclusion

For the reasons set forth above, (1) Siwik's motion is DENIED; (2) the Cleveland Clinic Defendants' motion is GRANTED IN PART and DENIED IN PART; and (3) the Akron Children's Defendants' motion is GRANTED IN PART and DENIED IN PART.  Specifically:

(1) Defendant Cleveland Clinic's Motion for Summary Judgment as to Counts One, Two, Four, Five, and Eight is GRANTED;

(2) Defendant Cleveland Clinic's Motion for Summary Judgment as to Counts Three and Six is DENIED;

(3) Defendant Akron Children's Hospital's Motion for Summary Judgment as to Count Eight is GRANTED;

(4) Defendant Akron Children's Hospital's Motion for Summary Judgment as to Counts Three and Seven is DENIED;

(5) Defendant Saarel's Motion for Summary Judgment as to Count Eight is DENIED;

(6) Defendant Lane's Motion for Summary Judgment as to Count Eight is DENIED;

(7) The Akron Children's Defendants' Motion for Summary Judgment on the issue of punitive damages is DENIED;

(8) Plaintiff Siwik's Motion for Partial Summary Judgment as to Counts Three, Seven, and Eight is DENIED.

**IT IS SO ORDERED.**

Date: March 5, 2019

s/ *Jonathan D. Greenberg*
Jonathan D. Greenberg
U.S. Magistrate Judge